| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Kristin Zilberstein (SBN: 20041)<br>Jennifer R. Bergh (SBN: 305219)<br>The Law Offices of Michelle Ghidotti<br>1920 Old Tustin Ave.<br>Santa Ana, CA  92705<br>Tel: (949) 427-2010<br>Fax: (949) 427-2732<br>Email: kzilberstein@ghidottilaw.com<br><br><br><br>☐  *Movant appearing without an attorney*<br>☒  *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br>Richard H. Bowen and Lori Bowen | CASE NO.: 8:17-bk-14927-CB<br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION<br>FOR RELIEF FROM THE AUTOMATIC<br>STAY UNDER 11 U.S.C. § 362<br>(with supporting declarations)<br>(REAL PROPERTY)** |
| Debtor(s). | DATE: 06/26/2018<br>TIME: 10:00 am<br>COURTROOM: 5D |

**Movant:** NP162, LLC, its successors and assigns

1. **Hearing Location:**

   ☐ 255 East Temple Street, Los Angeles, CA 90012          ☒ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

  a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

  b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

  c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 05/14/2018

The Law Offices of Michelle Ghidotti
_____
Printed name of law firm (if applicable)

Kristin Zilberstein, Esq.
_____
Printed name of individual Movant or attorney for Movant

/S/ Kristin Zilberstein
_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

    ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

    ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

    ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

    ☐ Other (specify):

2. **The Property at Issue (Property):**

    a. Address:

    *Street address*: 7902 La Casa Way
    *Unit/suite number*:
    *City, state, zip code*: Buena Park, CA 90620

    b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit  A   ):

3. **Bankruptcy Case History:**

    a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on (*date*)  12/22/2017  .

    b. ☒ An order to convert this case to chapter ☒ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) 05/09/2018  .

    c. ☐ A plan, if any, was confirmed on (*date*) _____ .

4. **Grounds for Relief from Stay:**

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

       (1) ☒ Movant's interest in the Property is not adequately protected.

          (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

          (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

          (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

       (2) ☐ The bankruptcy case was filed in bad faith.

          (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

          (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

          (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

          (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

          (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

          (F) ☐ Other (*see attached continuation page*):

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
       ☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion:** *(Declaration(s) MUST be signed under penalty of perjury and attached to this motion)*

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit D____.

d. ☒ Other:
    Appraisal of the Property attached hereto as Exhibit "E".

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 4                    **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1.  Relief from the stay is granted under:   ☒ 11 U.S.C. § 362(d)(1)   ☒ 11 U.S.C. § 362(d)(2)   ☐ 11 U.S.C. § 362(d)(3).

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its
    remedies to foreclose upon and obtain possession of the Property.

3.  ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan
    modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its
    servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4.  ☐ Confirmation that there is no stay in effect.

5.  ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to
    enforce its remedies regarding the Property shall not constitute a violation of the stay.

6.  ☒ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on
    the same terms and conditions as to the Debtor.

7.  ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8.  ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless
    of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in
    compliance with applicable nonbankruptcy law.

9.  ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws
    governing notices of interests or liens in real property, the order is binding in any other case under this title
    purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court,
    except that a debtor in a subsequent case under this title may move for relief from the order based upon changed
    circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any
    interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in
    compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in
    compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ.
    Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: 05/14/2018

The Law Offices of Michelle Ghidotti
_____
Printed name of law firm (*if applicable*)
Kristin Zilberstein
_____
Printed name of individual Movant or attorney for Movant

/S/ Kristin Zilberstein
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):

   c. ☒ Other (*specify*): Employed by SN Servicing Corporation, Servicing agent for Movant.

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _B___.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _A___.

   c. ☐ Servicing agent authorized to act on behalf of the:
      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:

   *Street address:* 7902 La Casa Way
   *Unit/suite no.:*
   *City, state, zip code:* Buena Park, CA 90620

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
   Recorded in the Official Records of Orange County, California, as Document No.: 2006-000831958.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                   Page 6                                   **F 4001-1.RFS.RP.MOTION**

5. Type of property (*check all applicable boxes*):

   a. ☒ Debtor's principal residence        b. ☐ Other residence
   c. ☐ Multi-unit residential              d. ☐ Commercial
   e. ☐ Industrial                          f. ☐ Vacant land
   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☒ Co-owner(s) (*specify*):Lori L. Bowen and Richard H. Bowen, Wife and Husband and Joint Tenants

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☒ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

   f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
      The deed was recorded on (*date*) _____.

7. Movant holds a  ☐ deed of trust  ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit A____.

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
      attached as Exhibit B____.

   c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
      trust to Movant is attached as Exhibit C____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 126,560.99 | $ 126,560.99 | $ 126,560.99 |
| b. | Accrued interest: | $ 155,974.16 | $ 155,974.16 | $ 155,974.16 |
| c. | Late charges | $ 2,844.30 | $ 2,844.30 | $ 2,844.30 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ 2,844.30 | $ 2,844.30 | $ 2,844.30 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[               ] | $[               ] | $[               ] |
| g. | TOTAL CLAIM as of (*date*):  5/11/2018 | $ 285,379.45 | $ 285,379.45 | $285,379.45 |

   h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):

   a. Notice of default recorded on (*date*) _9/28/2017___ or ☐ none recorded.

   b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a.  Amount of current monthly payment as of the date of this declaration: $ 1,286.82_____ for the month of June_____ 20_18_.

    b.  Number of payments that have come due and were not made: 125 . Total amount: $ 180,315.44_____

    c.  Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $ 1,286.82_____ will come due on (*date*) 06/01/2018 , and on the 1___ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d.  The fair market value of the Property is $ 580,000.00_____, established by:

        (1) ☒ An appraiser's declaration with appraisal is attached as Exhibit E____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other (*specify*):

    e.  **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☒ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | OCWEN | $ 515,367.45 | $ $509,653.89 *POC |
| 2nd deed of trust: | Movant | $ 155,595.20 | $ 285,379.45 |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ 795,033.34 | | | |

    f.  Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit D____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☒ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g.  ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 0.00_____ and is 0_____ % of the fair market value of the Property.

    h.  ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ 0.00_____.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*          Page 8          **F 4001-1.RFS.RP.MOTION**

i.  ☒ Estimated costs of sale: $ 46,400.00 _____ (estimate based upon 8 _____ % of estimated gross sales price)

j.  ☐ The fair market value of the Property is declining because:


12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d.  Postpetition advances or other charges due but unpaid:                      $
(*For details of type and amount, see Exhibit _____*)

e.  Attorneys' fees and costs:                                                  $
(*For details of type and amount, see Exhibit _____*)

f.  Less suspense account or partial paid balance:                          $[                    ]

TOTAL POSTPETITION DELINQUENCY:                          $

g.  Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____   received on (*date*) _____
$_____   received on (*date*) _____
$_____   received on (*date*) _____

i.  ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (*specify*):




18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☐ Multiple bankruptcy cases affecting the Property include:

        1. Case name: _____
           Chapter: _____  Case number: _____
           Date dismissed: _____  Date discharged: _____  Date filed: _____
           Relief from stay regarding the Property ☐ was  ☐ was not  granted.

        2. Case name: _____
           Chapter: _____  Case number: _____
           Date dismissed: _____  Date discharged: _____  Date filed: _____
           Relief from stay regarding the Property ☐ was  ☐ was not  granted.

        3. Case name: _____
           Chapter: _____  Case number: _____
           Date dismissed: _____  Date discharged: _____  Date filed: _____
           Relief from stay regarding the Property ☐ was  ☐ was not  granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/14/18 | Angela K Viale | Angela K. Viale |
|---|---|---|
| Date | Printed name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                        Page 11                        F 4001-1.RFS.RP.MOTION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1920 Old Tustin Ave.
Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 06/01/2018 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Counsel: Julie J Villalobos, julie@oaktreelaw.com, oakecfmail@gmail.com;
        villalobosjr51108@notify.bestcase.com
Trustee: Jeffrey I Golden (TR), ljones@wgllp.com, jig@trustesolutions.net;kadele@wgllp.com;lfisk@wgllp.com
U.S. Trustee: United States Trustee (SA), ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 06/01/2018 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor: Richard H Bowen, 7902 La Casa Way, Buena Park, CA 90620 (U.S. Mail)
Joint Debtor: Lori Bowen, 7902 La Casa Way, Buena Park, CA 90620 (U.S. Mail)
Judge: Honorable Catherine E. Bauer, 411 West Fourth Street, Suite 5165, Santa Ana, CA 92701-4593 (U.S. Mail)

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/01/2018 | Jeremy Romero | /s/ Jeremy Romero |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBIT "A"

LAWYERS TITLE

Recording Requested By:
AUTOMATED FINANCE CORP
22333 PACIFIC COAST HWY #208
MALIBU, CALIFORNIA 90265

And After Recording Return To:
AUTOMATED FINANCE CORP
22333 PACIFIC COAST HWY #208
MALIBU, CALIFORNIA 90265
Loan Number: 06-10697

Recorded In Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||    36.00

2006000831958 04:26pm 12/12/06

105 8 D11 11

0.00 0.00 0.00 0.00 30.00 0.00 0.00 0.00

[Space Above This Line For Recording Data] ———— ———————————.

# DEED OF TRUST

THIS DEED OF TRUST is made this 1st    day of DECEMBER, 2006        among the Trustor,
LORI L. BOWEN AND RICHARD H. BOWEN, WIFE AND HUSBAND AS JOINT
TENANTS
(herein "Borrower"),
LAWYERS TITLE COMPANY, , PASADENA, CALIFORNIA 91101
(herein "Trustee"),
and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
AUTOMATED FINANCE CORP, A CALIFORNIA CORPORATION
is organized and existing under the laws of   CALIFORNIA                and has an address of
22333 PACIFIC COAST HWY #208, MALIBU, CALIFORNIA 90265
(herein "Lender").
BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
ORANGE        , State of California:

This Deed of trust
is Second & Subject to
**EXHIBIT A**    a first Deed of trust
Recording Concurrently
herewith

THIS SECURITY INSTRUMENT IS SUBORDINATE TO AN EXISTING FIRST
LIEN(S) OF RECORD.
which has the address of 7902 LA CASA WAY

                                        [Street]
BUENA PARK                , California    90620        (herein "Property Address");
        [City]                            [Zip Code]

---

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS          Page 1 of 7          DocMagic eFormise 800-649-1362
                                                              www.docmagic.com

Ca3805.mzd

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property": Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated DECEMBER 1, 2006        and extensions and renewals thereof (herein "Note"), in the principal sum of ONE HUNDRED TWENTY-SEVEN THOUSAND AND 00/100
Dollars (U.S. $ 127,000.00        ), with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on JANUARY 1, 2037        ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

CALIFORNIA-SECOND MORTGAGE 1/80
Form 3805 - AS AMENDED FOR MERS                    Page 2 of 7                    DocMagic *eFORMS* 800-649-1362
                                                                                www.docmagic.com

Ca3805.mzd

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS            Page 3 of 7                    DocMagic *eFarms* 800-649-1362
                                                                        www.docmagic.com

CA3805.mzd

**10. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS                    Page 4 of 7                    DocMagic *eFormsTM* 800-649-1362
www.docmagic.com

Ca3805.mtd

by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgement enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS                    Page 5 of 7                    DocMagic €Ferrars 800-649-1362
                                                                                www.docmagic.com

Ca3805.mzd

Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder  an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligations.** Lender may collect a fee not to exceed $15 for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**24.** The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | PREPAYMENT RIDER |

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924B, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____, in Book _____,
Page _____, records of _____ County, (or filed for record with recorder's
serial number _____.     County), California, executed by

as trustor (or mortgagor) in which

is named as beneficiary (or mortgagee) and

as trustee be mailed to

at

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature: _____

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS          Page 6 of 7          DocMagic EForms 800-649-1362
www.docmagic.com

Ca3805.vzd

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 7 of this Deed of Trust.

_____        _____
LORI L. BOWEN              -Borrower      RICHARD H. BOWEN          -Borrower


_____        _____
                           -Borrower                                -Borrower


_____        _____
                           -Borrower                                -Borrower


State of California
County of LOS ANGELES

On December 1st, 2006 before me, CAROLYN Richardson, NOTARY Public
personally appeared LORI L. BOWEN, RICHARD H. BOWEN

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: Carolyn Richardson

CAROLYN RICHARDSON
Commission # 1630601
Notary Public - California
Los Angeles County
My Comm. Expires Dec 16, 2009

(Seal)

CALIFORNIA-SECOND MORTGAGE-1/80
Form 3805 - AS AMENDED FOR MERS          Page 7 of 7          DocMagic eForms 800-649-1362
                                                              www.docmagic.com

Ca3805.mzd

GOVERNMENT CODE 27361.7

I certify under penalty of perjury that the Notary Seal on the document to which this Statement is attached reads as follows:

NAME OF THE
NOTARY: _____ *Carolyn Richardson*
DATE COMMISSION
EXPIRES: _____ *12-16-09*
COUNTY WHERE BOND IS
FILED: _____ *L.A*
COMMISSION
NUMBER: _____ *1630601*    VENDOR#: _____ *NNA1*

I certify under penalty of perjury and the laws of the State of California that the illegible portion of this document to which this statement is attached reads as follows:

_____

_____

_____

_____

_____

_____

_____

_____

* Personally know to me (or proved to me on the basis of satisfactory evidence) to be the person(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which the person(s)acted, executed the instrument.

PLACE OF
EXECUTION:  **LOS ANGELES**                          *12-12-06*
                                    DATE:
SIGNATURE: _____

# PREPAYMENT RIDER

Date: DECEMBER 1, 2006

Borrower(s): LORI L. BOWEN, RICHARD H. BOWEN

THIS PREPAYMENT RIDER (the "Rider") is made this 1st    day of DECEMBER   .
2006    , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
AUTOMATED FINANCE CORP, A CALIFORNIA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

7902 LA CASA WAY, BUENA PARK, CALIFORNIA 90620
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.    PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

**6    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment." When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note. However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment. However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.

---

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05

Page 1 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

Capr.ppl

If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.


_____ (Seal)
LORI L. BOWEN              -Borrower

_____ (Seal)
RICHARD H. BOWEN          -Borrower


_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower


_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

DocMagic eForms 800-649-1362
www.docmagic.com

Czsc.ppf

# EXHIBIT "A"

All that certain real property situated in the County of Orange, State of California, described as follows:

Lot 69 of Tract No. 2397, in the City of Buena Park, County of Orange, State of California, as per Map recorded in book 78, Pages 26 through 29 inclusive of Miscellaneous maps, in the office of the County recorder of said County.

APN:  0263-361-014

# EXHIBIT "B"

# NOTE

| DECEMBER 1, 2006 | MALIBU | CALIFORNIA |
|---|---|---|
| Date | City | State |

| 7902 LA CASA WAY, BUENA PARK, CALIFORNIA 90620 | | | |
|---|---|---|---|
| Property Address | City | State | Zip Code |

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 127,000.00    (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is   AUTOMATED FINANCE CORP, A CALIFORNIA CORPORATION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

## 2. INTEREST

I will pay interest at a yearly rate of    11.800 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

## 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $ 1,286.82
I will make my payments on the  1st  day of each month beginning on  FEBRUARY 1, 2007 .
I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on  JANUARY 1, 2037    , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at 22333 PACIFIC COAST HWY #208, MALIBU, CALIFORNIA 90265
or at a different place if required by the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of   15 calendar days after the date it is due, I will promptly pay a late charge to the Note Holder. The amount of the charge will be     5.000 % of my overdue payment, but not less than U.S. $ 5.00         and not more than U.S. $ N/A          . I will pay this late charge only once on any late payment.

### (B) Notice From Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

### (C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

---

Ca3905.not

**(D)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 5.   THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**   If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

## 6.   BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7.   BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8.   GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**NOTICE TO BORROWER: Do not sign this Note if it contains blank spaces. All spaces should be completed before you sign.**

_____ (Seal)           _____ (Seal)
LORI L. BOWEN          -Borrower          RICHARD H. BOWEN       -Borrower


_____ (Seal)           _____ (Seal)
                       -Borrower                                 -Borrower


_____ (Seal)           _____ (Seal)
                       -Borrower                                 -Borrower


*[Sign Original Only]*

---

CALIFORNIA-SECOND MORTGAGE-6/84
3905

DocMagic *CPagans*  800-649-1362
www.docmagic.com

Ca3905.nst

# ASSIGNMENT OF NOTE
# WITHOUT RECOURSE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned hereby sells, transfers, endorses, assigns and delivers to:

NEW CENTURY MORTGAGE CORPORATION

All of his rights, title, and interest in and to the attached promissory note dated: DECEMBER 1, 2006 in the face amount of  $ 127,000.00                . The borrowers in said promissory note are: LORI L. BOWEN, RICHARD H. BOWEN

Said promissory note is secured by a security instrument of the same date on real property located at: 7902 LA CASA WAY, BUENA PARK, CALIFORNIA 90620

AUTOMATED FINANCE CORP, A CALIFORNIA CORPORATION

(Beneficiary)

transfers all rights accrued or to accrue under said note and securing security instrument in which the undersigned is the Beneficiary and borrowers are trustors.

Dated:

BENEFICIARY
AUTOMATED FINANCE CORP, A
CALIFORNIA CORPORATION

By: _____
Name and Title

ANNE TRAMBLE C.O.O.

Pay to the order of, without recourse
New Century Mortgage Corporation
By: _____
Steve Nagy
V.P. Records Management

DocMagic eForms  800-649-1362
www.docmagic.com

Aoawr.nsc-c

# EXHIBIT "C"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

**Recording Requested By:**
Shelving Rock

9.00

**When Recorded Mail To:**

2017000291942 9:13 am 07/17/17
9 413 A32 F13   1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

EQUITABLE MORTGAGE SOLUTIONS, LLC
1835 PEARL STREET
CARROLLTON, TEXAS 75006

## CORPORATE ASSIGNMENT OF DEED OF TRUST

S Ref #:

CA/ORANGE

MERS Phone #: (888) 679-6377

Assignment Prepared on: June 08, 2017

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AUTOMATED FINANCE CORP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS**, whose address is P.O. Box 2026, Flint. MI, 48501-2026 (herein "Assignor") hereby grant, assign, transfer and convey to **NP162, LLC**, whose address is 3 CORPORATE DRIVE, 2ND FLOOR, SHELTON, CT, 06484 (herein "Assignee") all interest under that certain Deed of Trust Dated: 12/1/2006, in the amount of $127,000.00, executed by LORI L BOWEN AND RICHARD H. BOWEN, WIFE AND HUSBAND AS JOINT TENANTS to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AUTOMATED FINANCE CORP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS and Recorded: 12/12/2006, Document #: 2006000831958 in ORANGE County, State of California and all rights accrued or to accrue under said Deed of Trust.

Property Address: 7902 LA CASA WAY, BUENA PARK, CA, 90620

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AUTOMATED FINANCE CORP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS

On: 6/9/17

Signature:

Name: ROBERT ROTHENBERG

Title: ASSISTANT SECRETARY

STATE OF Connecticut
COUNTY OF Fairfield

On 6-9-17 , before me, Nelida Rodriguez , a Notary Public in and for Fairfield County in the State of Connecticut , personally appeared Robert Rothenberg Assistant Secretary MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AUTOMATED FINANCE CORP, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Nelida Rodriguez
Notary Expires: 8-31-2018          / #: _____

NELIDA RODRIGUEZ
Notary Public, State of Connecticut
My Commission Expires Aug. 31, 2018

Page 1 of 1

# EXHIBIT "D"

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | **Richard H Bowen** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | **Lori Bowen** |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | **8:17-bk-14927-CB** |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                          12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
■ Yes. Where is the property?

| 1.1 | | | | |
|---|---|---|---|---|
| **7902 La Casa Way** | What is the property? Check all that apply | | | |
| Street address, if available, or other description | ■ Single-family home | | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* | |
| | ☐ Duplex or multi-unit building | | | |
| | ☐ Condominium or cooperative | | | |
| **Buena Park**   **CA**   **90620-0000** | ☐ Manufactured or mobile home | | Current value of the entire property? | Current value of the portion you own? |
| City    State    ZIP Code | ☐ Land | | **$490,000.00** | **$490,000.00** |
| | ☐ Investment property | | | |
| | ☐ Timeshare | | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. | |
| | ☐ Other | | **Fee simple** | |
| **Orange** | Who has an interest in the property? Check one | | | |
| County | ☐ Debtor 1 only | | | |
| | ☐ Debtor 2 only | | | |
| | ■ Debtor 1 and Debtor 2 only | | ■ Check if this is community property | |
| | ☐ At least one of the debtors and another | | (see instructions) | |
| | Other information you wish to add about this item, such as local property identification number: | | | |

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here........................................................=>   $490,000.00

**Part 2:** Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

| Debtor 1 | **Richard H Bowen** | | Case number *(if known)* | **8:17-bk-14927-CB** |
|---|---|---|---|---|
| Debtor 2 | **Lori Bowen** | | | |

**3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| 3.1 | Make: | **Toyota** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

Model: **Tacoma**

Year: **2013**

Approximate mileage: **18000**

Other information:

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

■ Check if this is community property
(see instructions)

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$25,800.00** | **$25,800.00** |

| 3.2 | Make: | **Buick** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

Model: **Encore**

Year: **2016**

Approximate mileage: **10000**

Other information:

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

■ Check if this is community property
(see instructions)

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$0.00** | **$0.00** |

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
■ Yes

| 4.1 | Make: | **Mirage** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

Model:

Year: **2016**

Other information:

**6x12 Trailer**

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

■ Check if this is community property
(see instructions)

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,500.00** | **$2,500.00** |

| 5 | Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.............................................................=> | **$28,300.00** |
|---|---|---|

**Part 3:**   Describe Your Personal and Household Items

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**6. Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes.  Describe.....

| 2 Bedroom Sets, Living Room Furnishings, Dining Room Furnishings, Den Furnishings | $2,000.00 |
|---|---|

| Debtor 1 | **Richard H Bowen** | | |
|---|---|---|---|
| Debtor 2 | **Lori Bowen** | Case number *(if known)* | **8:17-bk-14927-CB** |

**7. Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ☑ Yes. Describe.....

| 4 TVs, 1 Computer, Fridge, Washer, Dryer | $2,000.00 |
|---|---|

**8. Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☑ No
   ☐ Yes. Describe.....

**9. Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☑ No
   ☐ Yes. Describe.....

**10. Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
   ☐ No
   ☑ Yes. Describe.....

| 7 Handguns, 23 Hunting Rifles and Shotguns | $3,000.00 |
|---|---|

**11. Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ☑ Yes. Describe.....

| Everyday Wear | $100.00 |
|---|---|

**12. Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ☑ Yes. Describe.....

| 2 Wedding Bands, Costume Jewelry | $1,000.00 |
|---|---|

**13. Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ☐ No
   ☑ Yes. Describe.....

| 2 Cats | $100.00 |
|---|---|

**14. Any other personal and household items you did not already list, including any health aids you did not list**
   ☑ No
   ☐ Yes. Give specific information.....

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ...........................................................................

| $8,200.00 |
|---|

**Part 4:   Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?                                        Current value of the

Official Form 106A/B                              Schedule A/B: Property                                        page 3

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

| Debtor 1 | **Richard H Bowen** | | |
|---|---|---|---|
| Debtor 2 | **Lori Bowen** | Case number *(if known)* | **8:17-bk-14927-CB** |

**portion you own?**
Do not deduct secured
claims or exemptions.

**16. Cash**
　　*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
　■ No
　☐ Yes.................................................................................................

**17. Deposits of money**
　　*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
　　　　institutions. If you have multiple accounts with the same institution, list each.
　☐ No
　■ Yes........................　　　　　　　　　　　　Institution name:

| | 17.1. | **Checking** | **Chase** | **$500.00** |
|---|---|---|---|---|

| | 17.2. | **Savings** | **Chase** | **$350.00** |
|---|---|---|---|---|

**18. Bonds, mutual funds, or publicly traded stocks**
　　*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
　■ No
　☐ Yes.................　　　　Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership,**
　　**and joint venture**
　■ No
　☐ Yes.  Give specific information about them...................
　　　　　　　　Name of entity:　　　　　　　　　　% of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
　　*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
　　*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
　■ No
　☐ Yes. Give specific information about them
　　　　　　　　Issuer name:

**21. Retirement or pension accounts**
　　*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
　☐ No
　■ Yes. List each account separately.
　　　　　　　　Type of account:　　　　　Institution name:

| | **Pension** | **Boeing, no cash value** | **$0.00** |
|---|---|---|---|

**22. Security deposits and prepayments**
　　Your share of all unused deposits you have made so that you may continue service or use from a company
　　*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
　■ No
　☐ Yes. ....................　　　　　　　　Institution name or individual:

**23. Annuities (A contract for a periodic payment of money to you, either for life or for a number of years)**
　■ No
　☐ Yes.............　　　Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
　　26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
　■ No
　☐ Yes.............　　　Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

| | | |
|---|---|---|
| Debtor 1 | **Richard H Bowen** | |
| Debtor 2 | **Lori Bowen** | Case number *(if known)*   **8:17-bk-14927-CB** |

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes. Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes. Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**

☐ No
■ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

| | | |
|---|---|---|
| 2017 Projected Tax Refund | **Federal** | **$2,500.00** |

**29. Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

**30. Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No
☐ Yes. Give specific information..

**31. Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No
☐ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|

**32. Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No
☐ Yes. Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

■ No
☐ Yes. Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

■ No
☐ Yes. Describe each claim.........

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Debtor 1 | **Richard H Bowen** | | |
|---|---|---|---|
| Debtor 2 | **Lori Bowen** | Case number *(if known)* | **8:17-bk-14927-CB** |

**35. Any financial assets you did not already list**

■ No

☐ Yes. Give specific information..

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**............................................................................................    **$3,350.00**

**Part 5:**    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

**37. Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.

☐ Yes. Go to line 38.

**Part 6:**    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.

☐ Yes. Go to line 47.

**Part 7:**    Describe All Property You Own or Have an Interest In That You Did Not List Above

**53. Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership

■ No

☐ Yes. Give specific information.........

**54. Add the dollar value of all of your entries from Part 7. Write that number here** ....................................    **$0.00**

**Part 8:**    List the Totals of Each Part of this Form

| | | |
|---|---:|---:|
| **55. Part 1: Total real estate, line 2** ......................................................................................... | | **$490,000.00** |
| **56. Part 2: Total vehicles, line 5** | $28,300.00 | |
| **57. Part 3: Total personal and household items, line 15** | $8,200.00 | |
| **58. Part 4: Total financial assets, line 36** | $3,350.00 | |
| **59. Part 5: Total business-related property, line 45** | $0.00 | |
| **60. Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| **61. Part 7: Total other property not listed, line 54**    + | $0.00 | |
| **62. Total personal property. Add lines 56 through 61...** | $39,850.00    Copy personal property total | $39,850.00 |
| **63. Total of all property on Schedule A/B. Add line 55 + line 62** | | $529,850.00 |

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Richard H Bowen** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | **Lori Bowen** | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number   **8:17-bk-14927-CB**
(if known)

☐ Check if this is an
amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|---|---|
| **2.1** | **AmeriCredit/GM Financial**<br>Creditor's Name | Describe the property that secures the claim:<br>**2016 Buick Encore 10000 miles** | $3,303.00 | $0.00 | $3,303.00 |
| | **Po Box 181145<br>Arlington, TX 76096**<br>Number, Street, City, State & Zip Code | As of the date you file, the claim is: Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | | |
| | Who owes the debt? Check one.<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>■ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>■ Check if this claim relates to a community debt | Nature of lien. Check all that apply.<br>☐ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>■ Other (including a right to offset)    **Non-Purchase Money Security** | | | |
| | Date debt was incurred   **Opened 05/16  Last Active 10/31/17** | Last 4 digits of account number    **9445** | | | |
| **2.2** | **Ocwen Loan Servicing, Llc**<br>Creditor's Name | Describe the property that secures the claim:<br>**7902 La Casa Way Buena Park, CA 90620  Orange County** | $515,367.45 | $490,000.00 | $25,367.45 |
| | **12650 Ingenuity Dr<br>Orlando, FL 32826**<br>Number, Street, City, State & Zip Code | As of the date you file, the claim is: Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | | | |
| | Who owes the debt? Check one.<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>■ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another | Nature of lien. Check all that apply.<br>☐ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit | | | |

| Debtor 1 | **Richard H Bowen** | | | Case number (if know) | **8:17-bk-14927-CB** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | **Lori Bowen** | | | | |
| | First Name | Middle Name | Last Name | | |

■ Check if this claim relates to a    ■ Other (including a right to offset)    **First Mortgage**
community debt

| | | | | |
|---|---|---|---|---|
| Date debt was incurred | Opened 12/06 Last Active 9/08/17 | Last 4 digits of account number | 0096 | |

---

| 2.3 | **Schoolsfirst Fcu** | Describe the property that secures the claim: | $15,605.00 | $25,800.00 | $0.00 |
|---|---|---|---|---|---|
| | Creditor's Name | 2013 Toyota Tacoma 18000 miles | | | |

**Po Box 11547**
**Santa Ana, CA 92711**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Purchase Money Security**

| | | | | |
|---|---|---|---|---|
| Date debt was incurred | Opened 07/16 Last Active 10/20/17 | Last 4 digits of account number | 0800 | |

---

| 2.4 | **SN Servicing** | Describe the property that secures the claim: | $155,595.20 | $490,000.00 | $155,595.20 |
|---|---|---|---|---|---|
| | Creditor's Name | 7902 La Casa Way Buena Park, CA 90620  Orange County | | | |

**323 5th St**
**Eureka, CA 95501**
Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Deed of Trust**

| | | | |
|---|---|---|---|
| Date debt was incurred | | Last 4 digits of account number | 0778 |

---

Add the dollar value of your entries in Column A on this page. Write that number here:    **$689,870.65**

If this is the last page of your form, add the dollar value totals from all pages.
Write that number here:    **$689,870.65**

**Part 2:  List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

# EXHIBIT "E"

1  Kristin Zilberstein, Esq. (200041)
   Jennifer R. Bergh, Esq. (305219)
2  LAW OFFICES OF MICHELLE GHIDOTTI
   1920 Old Tustin Ave.
3  Santa Ana, CA  92705
   Tel: (949) 427-2010
4  Fax:  (949) 427-2732
   kzilberstein@ghidottilaw.com
5

6  Attorneys for Secured Creditor
   NP162, LLC, its successors and assigns
7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10  In re:                              )  Case No.: 8:17-bk-14927-CB
                                        )
11  Richard H Bowen and Lori Bowen,     )  CHAPTER 13
                                        )
12                      Debtors         )
                                        )  **DECLARATION OF APPRAISER**
13                                      )
                                        )  Honorable Catherine E. Bauer
14                                      )
                                        )
15                                      )
                                        )
16                                      )
                                        )
17                                      )
                                        )
18                                      )

19

20      I, Robert F. Wilson, CRA, SCA, declare as follows:

21      I am a certified real estate appraiser, California License No.: AR009326 and I have

22  been licensed by the State of California continuously since __10/23/92__ .  I have

23  conducted numerous single family residential real property appraisals in the area where the

24  subject property is located.  A true and correct copy of my Professional Resume detailing my

25  experience is attached hereto as Exhibit "1" and is incorporated herein by reference.  I have

26  personal knowledge of the matters set forth in this declaration, or I have gained knowledge of

27  them from sources and documents which I normally use to conduct and draft appraisals. As to

28

                            DECLARATION OF APPRAISER

the statements made upon information and belief, I believe them to be true. I could and would testify competently to the matters set forth herein if called upon to do so, and with mutual consent. I am over the age of 18.

In or about March of 2018, on behalf of secured creditor NP162, LLC, its successors and assigns, I was hired to prepare an appraisal of the single family residential real property located at 7902 La Casa Way, Buena Park, CA 90620 (the "**Property**").

On or about April 25, 2018, I conducted a full interior and exterior inspection of the Property, as more particularly described in the Appraisal Report prepared by me attached hereto as Exhibit "2" and incorporated herein by reference ("**Appraisal Report**").

I developed my opinion as to the market value of the Property based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this Appraisal Report. I selected and used comparable sales that are locationally, physically and functionally the most similar to the subject Property. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the Property and the comparable sales. The sales comparison approach is the best indicator of value as it best reflects the sales trends between buyers and sellers in an open market.

My opinion as to the market value of the Property, based upon the information I have been able to gather concerning, among other things, the current market conditions in the subject area, is that as of December 22, 2017 (effective date of appraisal), the market value of the Property was $580,000.00, as reflected in the Appraisal Report.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed this ___o l___ day of June _____, 2018, at ___Bellflower___, California.

DECLARATION OF APPRAISER

1

2    By: _____
     Robert F. Wilson, Declarant

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF APPRAISER

# EXHIBIT "1"

# ROBERT F. WILSON CRA, SCA
## Ca. State Certificate #AR009326
### Actively involved in Real Estate since 1983

**Appraisal Experience:**

- Experience appraising residential properties in Los Angeles, Orange, Riverside, San Bernardino and Coastal Properties.

- Express Appraisal – 1988 to present (owner and manager)

- New Century Mortgage Wholesale Division – 1999 to 2001

- Amstar Appraisal – 1988 to 1989

- Home Saving of America – 1985 to 1988

- All Western States Appraisal Co. – 1983 to 1985

**Membership:**

- California Society of Appraisers (Senior Certified Appraiser)

- National Association of review Appraisers (Certified Review Appraiser)

- National Association of Independent Fee Appraisers (Candidate Appraiser)

- Chamber of Commerce

- Bellflower Noon Lion's Club

# EXHIBIT "2"



## APPRAISAL OF REAL PROPERTY

### LOCATED AT:
7902 La Casa Way
N-Tract:2397 Block: Lot: # 69
Buena Park, CA 90620

### FOR:
The Law Offices of Michelle Ghidotti
5120 E La Palma Ave
Anaheim Hills, CA 92807

### AS OF:
12/22/2017

### BY:
Robert F. Wilson CRA SCA
Express Appraisal Company
P.O. Box 337
Bellflower, Ca 90707

expressappraisal.com

Main File No. PEDAC | Page #2

Summary Appraisal Report

# Uniform Residential Appraisal Report

File # PEDA

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address 7902 La Casa Way | City Buena Park | State CA | Zip Code 90620 |
|---|---|---|---|

| Borrower Richard & Lori Bowen | Owner of Public Record Richard & Lori Bowen | County Orange |
|---|---|---|

Legal Description   N-Tract:2397 Block: Lot: # 69

| Assessor's Parcel #   Ap # 263-361-14 | Tax Year 2017 | R.E. Taxes $ 3,410 |
|---|---|---|

| Neighborhood Name City of Buena Park | Map Reference 767 / E3 | Census Tract 1103.01 |
|---|---|---|

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 0    ☐ PUD  HOA $ 0    ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe)

Lender/Client   The Law Offices of Michelle Ghidotti    Address   5120 E La Palma Ave, Suite # 206, Anaheim Hills, CA 92807

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).    CRMLS / the subject property is not currently or has not been offered for sale within the past 12 months prior to the effective date of this appraisal report.

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

Contract Price $         Date of Contract         Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | PRICE $ (000) | AGE (yrs) | One-Unit | 70 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | 400 Low 45 | | 2-4 Unit | 10 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 665 High 65 | | Multi-Family | 10 % |
| Neighborhood Boundaries   North of the Crescent Avenue, of the 91 freeway, West of Knott Avenue, | | | | | | Commercial | 10 % |
| East of Walker Street. | | | | 580 Pred. 55 | | Other | 0 % |

Neighborhood Description    See attached addenda.

Market Conditions (including support for the above conclusions)    See Attached Text Addendum.

| Dimensions Irregular | Area 6500 sf | Shape Irregular / See Plat Map | View N;Res; |
|---|---|---|---|

| Specific Zoning Classification RS-6 | Zoning Description Single Family Residential Zone |
|---|---|

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water ☒ | | | Street Asphalt | ☒ | ☐ |
| Gas | ☒ | | Sanitary Sewer ☒ | | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X500   FEMA Map # 06059C0107J   FEMA Map Date 12/03/2009

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

See attached addenda.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls | Concrete / Average | Floors | WoodCarptTile Avg |
| # of Stories 1 | | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | StuccoWood / Avg | Walls | PlasterDrywall/Avg |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | | Basement Area 0 sq.ft. | | Roof Surface | Comp / Average | Trim/Finish | Wood / Average |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 0 % | | Gutters & Downspouts Metal / Average | | Bath Floor | Tile / Average |
| Design (Style) Traditional | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | Vinyl Wood /Average | Bath Wainscot | Tile / Average |
| Year Built 1955 | | Evidence of ☐ Infestation | | Storm Sash/Insulated None / N/A | | Car Storage | ☐ None |
| Effective Age (Yrs) 50 | | ☐ Dampness ☐ Settlement | | Screens | Fabric / Average | ☒ Driveway # of Cars 2 |  |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities | ☐ Woodstove(s) # 0 | Driveway Surface | Concrete |
| ☐ Drop Stair ☐ Stairs | | ☐ Other Fuel Gas | | ☐ Fireplace(s) # 0 ☒ Fence "Below" | | ☒ Garage # of Cars 2 |  |
| ☐ Floor ☒ Scuttle | | Cooling ☒ Central Air Conditioning | | ☒ Patio/Deck Covrd ☒ Porch Concrete | | ☐ Carport # of Cars 0 |  |
| ☐ Finished ☐ Heated | | ☐ Individual ☐ Other | | ☐ Pool None | ☐ Other None | ☐ Att. ☐ Det. ☐ Built-in |  |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☒ Other (describe) Fan Hood / Personal Refrigerator

Finished area above grade contains:   6 Rooms   2 Bedrooms   2.0 Bath(s)   1,604 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).   See attached addenda.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   C4;Kitchen-updated-eleven to fifteen years ago;Bathrooms-updated-eleven to fifteen years ago;The subject property is noted to be in average condition. The appraiser performed a "Head & Shoulders" inspection of the attic and crawl space. ALL UTILITIES WERE NOTED TO BE ON AT THE TIME OF APPRAISAL INSPECTION. The Water Heater was noted to be properly strapped with a downpipe attached to the pressure relief valve. The appraiser notes that the subject property was noted to have functional CO/Smoke detectors installed at the time of appraisal inspection.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

There are no adverse conditions that affect the livability, soundness, or structural integrity of the property.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

The subject property appears to conform to the neighborhood with regard to functional utility, style, condition, use, construction and construction.

| Freddie Mac Form 70 March 2005 | UAD Version 9/2011  Page 1 of 6 | Fannie Mae Form 1004 March 2005 |
|---|---|---|

## Uniform Residential Appraisal Report

REDA
File # CTED

| | There are | 0 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 0 | to $ 0 | . |
|---|---|---|---|---|---|
| | There are | 60 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 440,000 | to $ 655,000 | . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 7902 La Casa Way | 5932 Los Encinos St | 7837 La Habra Cir | 8032 San Lazaro Cir |
| | Buena Park, CA 90620 | Buena Park, CA 90620 | Buena Park, CA 90620 | Buena Park, CA 90620 |
| Proximity to Subject | | 0.74 miles SW | 0.57 miles E | 0.19 miles SE |
| Sale Price | $ | $ 600,000 | $ 610,000 | $ 569,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 421.94 sq.ft. | $ 408.03 sq.ft. | $ 391.07 sq.ft. |
| Data Source(s) | | CRMLS# OC17261881;DOM 10 | CRMLS# PW17132779;DOM 61 | CRMLS# PW17011691;DOM 29 |
| Verification Source(s) | | NDC/Title Company/Realist.com | NDC/Title Company/Realist.com | NDC/Title Company/Realist.com |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | VA;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s12/17;c12/17 | | s09/17;c08/17 | | s02/17;c01/17 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6500 sf | 6100 sf | 0 | 6000 sf | 0 | 6000 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Traditional | DT1;Traditional | | DT1;Traditional | | DT1;Traditional | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 63 | 63 | | 62 | 0 | 63 | |
| Condition | C4 | C3 | -30,000 | C3 | -30,000 | C4 | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6  2  2.0 | 6  3  2.0 | 0 | 6  3  2.0 | 0 | 6  3  2.0 | 0 |
| Gross Living Area | 1,604 sq.ft. | 1,422 sq.ft. | +6,500 | 1,495 sq.ft. | +4,000 | 1,455 sq.ft. | +5,000 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Fau / Cac | Fau / None | +5,000 | Fau / Cac | | Fau / None | +5,000 |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | Porch, Patio | Porch, Patio | | Porch, Patio | | Porch, Patio | |
| Fireplace(s) | Fireplace | Fireplace | | No Fireplace | +5,000 | Fireplace | |
| Pool / Spa / Guest House | No Pool | No Pool | | No Pool | | No Pool | |
| Document # | Doc. # N/A | Doc. # 549404 | 0 | Doc. # 408714 | 0 | Doc. # 68063 | 0 |
| Net Adjustment (Total) | | [ ] + [X] - $ | -18,500 | [ ] + [X] - $ | -21,000 | [X] + [ ] - $ | 10,000 |
| Adjusted Sale Price | | Net Adj.  3.1 % | | Net Adj.  3.4 % | | Net Adj.  1.8 % | |
| of Comparables | | Gross Adj.  6.9 % $ | 581,500 | Gross Adj.  6.4 % $ | 589,000 | Gross Adj.  1.8 % $ | 579,000 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   NDC, Realist.com
My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   NDC, Realist.com
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 05/02/2005 | 08/08/2017 | 03/30/2017 | 07/06/2009 |
| Price of Prior Sale/Transfer | $0 | $440,000 | $475,000 | $0 |
| Data Source(s) | Per Realist & NDC | Per Realist & NDC | Per Realist & NDC | Per Realist & NDC |
| Effective Date of Data Source(s) | 04/24/2018 | 04/24/2018 | 04/24/2018 | 04/24/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales     The subject property Comparables #3, #4, #5,#6, and #7 have not had a recent prior transfer within the defined. Comparables #1 and #2 have had a prior transfer within the recent defined past. The prior transfer for comparable # 2 is reported to be a Short Sale on 08/08/2017 for $440,000 below current market value and has been updated since the last prior transfer. The prior transfer for comparable # 1 is reported to be a (Non Arm's Lenth Transaction) on 03/30/2017 for $475,000 below current market value and has been updated since the last prior transfer.

Summary of Sales Comparison Approach     See attached addenda.

Indicated Value by Sales Comparison Approach $   580,000
Indicated Value by: Sales Comparison Approach $   580,000     Cost Approach (if developed) $   581,000     Income Approach (if developed) $
Although supported by the cost approach, the Market Approach is given the greatest weight as it best reflects the attitudes of buyers and sellers in the marketplace. The income approach is deemed not applicable as this area is predominantly owner occupied.

APPRAISAL REPORT CONFORMS TO THE INTENT OF USPAP GUIDELINES.
This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: The appraiser notes that the appraisal report was completed as a retrospective appraisal report as of 12/22/2017.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $   580,000 , as of   12/22/2017 , which is the date of inspection and the effective date of this appraisal.

## Uniform Residential Appraisal Report
File # REDACTE

N/A

ADDITIONAL COMMENTS

---

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     Land value was obtained through the extraction method, as there appeared to be a scarcity of recent unimproved land sales within the subject's immediate market area.  The land to improvement ratio is typical for the area.

| | | | | | |
|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ | 455,000 |
| Source of cost data  Marshall & Swift Cost Handbook | DWELLING | 1,604 Sq.Ft. @ $ | 185.00 | =$ | 296,740 |
| Quality rating from cost service  Average  Effective date of cost data  08/2016 | | 0 Sq.Ft. @ $ | | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Porch Patio | | | =$ | 15,000 |
| SEE ATTACHED SKETCH | Garage/Carport | 420 Sq.Ft. @ $ | 35.00 | =$ | 14,700 |
| The land to improvement ratio 78% and is typical for the area. The land to | Total Estimate of Cost-New | | | =$ | 326,440 |
| improvement ratio is common and typical for the area and has no impact | Less  Physical  Functional  External | | | | |
| on marketability and value. | Depreciation  192,012  18,000 | | | =$( | 210,012) |
| The final improvement value is $126,000. The high land site value to | Depreciated Cost of Improvements | | | =$ | 116,000 |
| improvement value ratio is typical for the area. | "As-is" Value of Site Improvements | | | =$ | 10,000 |
| The remaining economic life is estimated at approximately 35 years. | | | | | |
| Estimated Remaining Economic Life (HUD and VA only)  35 Years | INDICATED VALUE BY COST APPROACH | | | =$ | 581,000 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)     The subject property is located in an area of primarily owner-occupied single family residences and the Income Approach is not considered to be meaningful.  For this reason, the Income Approach was not used.

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No    Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

---

## Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Main File No. REDAC    Page #6

## Uniform Residential Appraisal Report

REDA
File # REDACTE

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Main File No. REDAC | Page #7

## Uniform Residential Appraisal Report

REDA
File # REDACTE

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Robert F. Wilson CRA SCA | Name |
| Company Name  Express Appraisal | Company Name |
| Company Address  P.O. Box 337 | Company Address |
| Bellflower, CA 90706 | |
| Telephone Number  (562) 925-1073 | Telephone Number |
| Email Address  robert@expressappraisal.com | Email Address |
| Date of Signature and Report  04/25/2018 | Date of Signature |
| Effective Date of Appraisal  12/22/2017 | State Certification # |
| State Certification #  AR009326 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License  08/31/2019 | **SUBJECT PROPERTY** |

ADDRESS OF PROPERTY APPRAISED
7902 La Casa Way
Buena Park, CA 90620
APPRAISED VALUE OF SUBJECT PROPERTY $    580,000
LENDER/CLIENT
Name  Lres
Company Name  The Law Offices of Michelle Ghidotti
Company Address  5120 E La Palma Ave, Suite # 206, Anaheim
Hills, CA 92807
Email Address  appraisals@lrescorp.com

**SUBJECT PROPERTY**
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection
☐ Did inspect interior and exterior of subject property
    Date of Inspection

**COMPARABLE SALES**
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection

Form 1004UAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # REDACTE

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 7902 La Casa Way | 6162 San Lorenzo Dr | | 5771 Los Arcos Way | | 6129 MacArthur Way | |
| | Buena Park, CA 90620 | Buena Park, CA 90620 | | Buena Park, CA 90620 | | Buena Park, CA 90620 | |
| Proximity to Subject | | 0.21 miles S | | 0.48 miles SW | | 0.24 miles NW | |
| Sale Price | $ | $ | 610,000 | $ | 575,000 | $ | 639,900 |
| Sale Price/Gross Liv. Area | $        sq.ft. | $   349.17 sq.ft. | | $   333.53 sq.ft. | | $   328.49 sq.ft. | |
| Data Source(s) | | CRMLS# PW17050676;DOM 4 | | CRMLS# OC17183856;DOM 7 | | CRMLS# PW17275216;DOM 25 | |
| Verification Source(s) | | NDC/Title Company/Realist.com | | NDC/Title Company/Realist.com | | NDC/Title Company/Realist.com | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | Listing | |
| Concessions | | Conv;0 | | Conv;0 | | Listing;0 | |
| Date of Sale/Time | | s04/17;c04/17 | | s09/17;c08/17 | | Active | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6500 sf | 7200 sf | 0 | 6000 sf | 0 | 6100 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Traditional | DT1;Traditional | | DT1;Traditional | | DT1;Traditional | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 63 | 62 | 0 | 63 | | 57 | 0 |
| Condition | C4 | C3 | -30,000 | C4 | | C4 | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6  2  2.0 | 7  4  2.0 | 0 | 6  3  2.0 | 0 | 7  4  2.0 | 0 |
| Gross Living Area | 1,604 sq.ft. | 1,747 sq.ft. | -5,000 | 1,724 sq.ft. | -4,000 | 1,948 sq.ft. | -12,000 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Fau / Cac | Fau / Cac | | Fau / None | +5,000 | Fau / Cac | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2ga2dw | 2gd2dw | 0 | 2dw | +10,000 | 2ga2dw | |
| Porch/Patio/Deck | Porch, Patio | Porch, Patio | | Porch, Patio | | Porch, Patio | |
| Fireplace(s) | Fireplace | Fireplace | | Fireplace | | Fireplace | |
| Pool / Spa / Guest House | No Pool | No Pool | | No Pool | | No Pool | |
| Document # | Doc. # N/A | Doc. # 173505 | | Doc. # 393581 | | Doc. # N/A | |
| Net Adjustment (Total) | | □ + ☒ - $ | -35,000 | ☒ + □ - $ | 11,000 | □ + ☒ - $ | -12,000 |
| Adjusted Sale Price | | Net Adj.    5.7 % | | Net Adj.    1.9 % | | Net Adj.    1.9 % | |
| of Comparables | | Gross Adj.  5.7 % $ | 575,000 | Gross Adj.  3.3 % $ | 586,000 | Gross Adj.  1.9 % $ | 627,900 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 05/02/2005 | 09/15/2005 | 09/15/2005 | 12/24/1991 |
| Price of Prior Sale/Transfer | $0 | $0 | $0 | $0 |
| Data Source(s) | Per Realist & NDC | Per Realist & NDC | Per Realist & NDC | Per Realist & NDC |
| Effective Date of Data Source(s) | 04/24/2018 | 04/24/2018 | 04/24/2018 | 04/24/2018 |

Analysis of prior sale or transfer history of the subject property and comparable sales      The subject property Comparables  #3, #4, #5,#6, and #7have not had a recent prior transfer within the defined. Comparables #1 and #2 have had a prior transfer within the recent defined past. The prior transfer for comparable # 2 is reported to be a Short Sale on 08/08/2017 for $440,000 below current market value and has been updated since the last prior transfer. The prior transfer for comparable # 2 is reported to be a (Non Arm's Lenth Transaction) on 03/30/2017 for $475,000 below current market value and has been updated since the last prior transfer.

Analysis/Comments      Comparables #4, #5, #6, and #7 are added to further support the appraised value.

Form 1004UAD.(AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File No. REDACTED  Page #9

## Uniform Residential Appraisal Report

REDA
File # REDACTED

| FEATURE | SUBJECT | COMPARABLE SALE #7 | | COMPARABLE SALE #8 | | COMPARABLE SALE #9 | |
|---|---|---|---|---|---|---|---|
| Address 7902 La Casa Way | | 6042 San Yuba Way | | | | | |
| Buena Park, CA 90620 | | Buena Park, CA 90620 | | | | | |
| Proximity to Subject | | 0.34 miles SW | | | | | |
| Sale Price | $ | | $ 647,888 | | $ | | $ |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 377.34 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | CRMLS# RS17262969;DOM 22 | | | | | |
| Verification Source(s) | | NDC/Title Company/Realist.com | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Listing | | | | | |
| Concessions | | Pending;0 | | | | | |
| Date of Sale/Time | | c12/17 | | | | | |
| Location | N;Res; | N;Res; | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 6500 sf | 6000 sf | 0 | | | | |
| View | N;Res; | N;Res; | | | | | |
| Design (Style) | DT1;Traditional | DT1;Traditional | | | | | |
| Quality of Construction | Q4 | Q4 | | | | | |
| Actual Age | 63 | 63 | | | | | |
| Condition | C4 | C3 | -25,000 | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6    2    2.0 | 7    4    2.0 | 0 | | | | |
| Gross Living Area | 1,604 sq.ft. | 1,717 sq.ft. | -4,000 | sq.ft. | | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | Fau / Cac | Fau / Cac | | | | | |
| Energy Efficient Items | None Noted | None Noted | | | | | |
| Garage/Carport | 2ga2dw | 2ga2dw | | | | | |
| Porch/Patio/Deck | Porch, Patio | Porch, Patio | | | | | |
| Fireplace(s) | Fireplace | Fireplace | | | | | |
| Pool / Spa / Guest House | No Pool | No Pool | | | | | |
| Document # | Doc. # N/A | Doc. # N/A | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -29,000 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 4.5 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 4.5 % | $ 618,888 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #7 | COMPARABLE SALE #8 | COMPARABLE SALE #9 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 05/02/2005 | 08/27/2013 | | |
| Price of Prior Sale/Transfer | $0 | $470,000 | | |
| Data Source(s) | Per Realist & NDC | Per Realist & NDC | | |
| Effective Date of Data Source(s) | 04/24/2018 | 04/24/2018 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales    The subject property Comparables #3, #4, #5,#6, and #7have not had a recent prior transfer within the defined. Comparables #1 and #2 have had a prior transfer within the recent defined past. The prior transfer for comparable # 2 is reported to be a Short Sale on 08/08/2017 for $440,000 below current market value and has been updated since the last prior transfer. The prior transfer for comparable # 2 is reported to be a (Non Arm's Lenth Transaction) on 03/30/2017 for $475,000 below current market value and has been updated since the last prior transfer.

Analysis/Comments    Comparables #4, #5, and #7 are added to further support the appraised value.

### Supplemental Addendum

File No. REDACTE

| Borrower/Client | Richard & Lori Bowen | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | | |
| City | Buena Park | County | Orange | State | CA | Zip Code 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | | |

• URAR : Neighborhood - Description

Subject neighborhood consists primarily of one story detached average quality SFR's of compatibly mixed styles, sizes and ages. Close proximity to schools, shopping and other necessary services.

Neighborhood is located South of the 91 Freeway.

No adverse effects noted.

• URAR : Neighborhood - Market Conditions

General market conditions have been experiencing lower sales volume over the past 12 months with a stabilizing supply of homes on the market with stable list prices. Interest rates remain at favorable levels with a variety of loan programs available but access to credit has tightened. Loan discounts or seller concessions do appear prevalent at this time. The subject's immediate market area has been stabilizing after experiencing strong increases in value from 2012 through the first half of 2014, tapering off to slower appreciation rate. Since the first half of 2016 home values have showed modest to no gains with prices stabilizing in most markets.

### • URAR : Site - Adverse Conditions or External Factors

Subject site is a corner lot on a residential street with a residential view.

No adverse effects noted.

Extraordinary Assumption as typical for easements and encroachments, as title report was not reviewed by the Appraiser at the time of the appraisal inspection.

• URAR : Improvements - Additional Features

*Fencing consists Block & Wood.* Front Yard & Rear Yard, 2 Covered patios, with attached 2 Car Garage & Workshop/Storage Area. 2 Bedroom / 2 Bathroom Dwelling, Wood, Carpet, & Tile Flooring, Central Heat, Kitchen with Formica Counter Tops & Tile Flooring. (Above ground spa / No value given to personal property)

• URAR : Improvements - Physical Deficiencies or Adverse Conditions

Subject was found to be in overall average condition, built of average quality construction.

The following items were noted at the time of appraisal inspection:

1.) CHIPPED PAINT & DRYROT (TERMITE) ON EXTERIOR WOOD TRIM. ESTIMATED COST TO CURE $5,000.

2.) CHIPPED PAINT, CHIPPED STUCCO, & CRACKS ON EXTERIOR WALLS OF DWELLING. ESTIMATED COST TO CURE $3,000.

3.) CHIPPED PAINT, CHIPPED STUCCO, & CRACKS ON EXTERIOR FENCE. ESTIMATED COST TO CURE $4,000.

4.) THE OWNER INDICATED THAT THE ROOF HAS DAMAGE AND SMALL LEAKS, THE APPRAISER DID NOT NOTICE ANY WATER MARKS OR INTERIOR DAMAGE AT THE TIME OF APPRAISAL INSPECTION. ESTIMATED COST TO CURE $6,000.

THE APPRAISER DID NOT  NOTE ANY ADVERSE EFFECTS ON HEALTH, SAFETY, SOUNDNESS, STRUCTURAL INTEGRITY OF THE PROPERTY, EFFECT ON VALUE, OR MARKETABILITY.

THE ESTIMATED COST TO CURE THE ABOVE MENTIONED ITEMS IS ESTIMATED TO BE $15,000. THIS IS AN ESTIMATE ONLY AS THE APPRAISER IS NOT A LICENSED CONTRACTOR AND THIS IS BEYOND THE APPRAISER SCOPE OF WORK.

THE ESTIMATED COST TO CURE WAS DERIVED BY ON LINE SOURCES, AND VERBAL ESTIMATES BY PROFESSIONALS. THIS DOES NOT  APPEAR TO HAVE AN EFFECT ON THE VALUE AND MARKETABILITY OF THE SUBJECT PROPERTY. NO ADJUSTMENTS WERE DEEMED TO BE WARRANTED.

The appraiser has attached to construction proposal documents that were provided by the owner at the time of appraisal inspection.

No other physical, functional nor external obsolescence noted at the time of appraisal inspection.

The remaining economic life is estimated at approximately 35 years.

The appraiser does not guarantee that the property is free from defects.

URAR : Sales Comparison Analysis - Summary of Sales Comparison Approach

All comparables are taken from the same or similar market areas,having similar market influences and are given equal weight.

Appraiser notes that all, though not limited to, avenues, including MLS, title companies, NDC, local knowledgeable realtors, and Appraiser's past work files have been exhausted searching for recent SFR sales with similar size, style, and utility and Appraiser found that the comparable sales utilized appear to be the best available within the market area at the time of appraisal inspection.

It was necessary to use comparables from across major roadways and from the subject property, as there appeared to be a scarcity of more recent  comparables with similar lot size, age, condition, utility, dwelling square footage, and with similar

## Supplemental Addendum

File No. REDACTE

| Borrower/Client | Richard & Lori Bowen | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | | |
| City | Buena Park | County | Orange | State | CA | Zip Code | 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | | |

amenities from the subject market area.

It was necessary to use comparables # 3 and # 4 from over 6 months from the date of appraisal inspection and appraisal preparation.The appraiser noted a lack of similar comparables with a similar location, lot size, age, condition, utility, dwelling square footage and amenities more similar within the subjects market area.

The search criteria is +/-25% square footage variance with 2+ bedrooms within the subjects defined neighborhood boundaries within the past 12 months. The appraiser has attached a comparable data pool within the appraisal report.

No lot adjustment was given to the comparables as it could not abstracted from this particular market area.

No age adjustment was given to the comparables as it could not abstracted from this particular market area.

The condition adjustments made to comparables are due to their maintenance and upgrades, or lack there of, as compared to the subject property as reported by the MLS, MLS photos and drive by inspection.

The gross living area adjustment was calculated at approx. $35 per square foot and was obtained utilizing the abstraction method.

No adjustment was given to differentiate between 2 and 4 bedrooms as they are similar in size and it could not be abstracted from this particular market. Further, the appraiser notes that making a square footage adjustment and a bedroom adjustment may be deemed "Double' adjusting.

Fau/Cac unit adjustments were calculated at $5,000 per Fau/Cac unit and were obtained utilizing the abstraction method.

Garage count adjustment was calculated at $5,000 per car count and was obtained utilizing the abstraction method.

THE APPRAISER NOTES THAT THE COMPARABLES UTILIZED IN THE APPRAISAL REPORT ARE NOTED TO BE THE BEST AVAILABLE AT THE TIME OF APPRAISAL INSPECTION AS COMPARED TO THE SUBJECT PROPERTY IN SIZE, STYLE, AGE AND CONDITION.

ALL COMPARABLES SALES WERE WEIGHTED EQUALLY AND WERE GIVEN EQUAL WEIGHT WITH NO GREATEST WEIGHT GIVEN TO ONE COMPARABLE. THE APPRAISED VALUE IS BRACKETED BY THE SALES COMPARABLES UTILIZED AND SUPPORTED AND BRACKETED BY THE LISTING COMPARABLES UTILIZED.

ALL ADJUSTMENTS GIVEN WITHIN THE ORIGINAL APPRAISAL REPORT WERE BRACKETED BY THE COMPARABLES UTILIZED WITH ALL ADJUSTMENTS BEING ABSTRACTED FROM THE COMPARABLES. ALL ADJUSTMENTS MADE ON THE COMPARABLES UTILIZED WERE OBTAINED FROM THE MATCHED PAIR SALES ANALYSIS.

THE APPRAISED VALUE IS SUPPORTED AND BRACKETED BY ALL COMPARABLES UTILIZED WITHIN THE APPRAISAL REPORT.

### EXPOSURE TIME

Marketing time for the appraisal property is estimated to be 1-90 days.
A reasonable exposure time for the subject property developed independently from the stated marketing time is 10-90 days. This is normal for this neighborhood under current market conditions.

### DISCLOSURE OF PRIOR SERVICES FOR SUBJECT PROPERTY

Unless otherwise noted, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

Lres license # is 1261.

THE TAX RECORDS FOR THE SUBJECT PROPERTY WERE NOT AVAILABLE ONLINE. PER NDC PUBLIC RECORDS AND REALIST.COM THE TAX AMOUNT FOR THE SUBJECT PROPERTY IS NOTED TO BE $3,410.26 / TAX YEAR 2016. SEE ATTACHED SUBJECT PROPERTY / PUBLIC RECORD ADDENDUM.

THE APPRAISER NOTES THAT THE APN # AND LEGAL DESCRIPTION ON THE REPORT MATCH THAT OF NDC PUBLIC RECORDS AND REALIST.COM. SEE ATTACHED SUBJECT PROPERTY / PUBLIC RECORD & LEGAL DESCRIPTION ADDENDUM.

THE APPRAISER UTILIZED HIS KNOWLEDGE OF THE SUBJECT MARKET AREA, THE MLS, REALIST.COM, NDC PUBLIC RECORDS, AND NORTH AMERICAN TITLE COMPANY.

No employee, director, officer, or agent of the lender, or any other third party acting as a joint venture partner, independent contractor, appraisal management company, or partner on behalf of the lender has influenced or attempted to influence the development, reporting, result or review of this assignment through coercion, extortion, collusion, compensation, instruction, inducement, intimidation, bribery or in any other manner.  I have not been contacted by anyone other than the intended user (lender/client as identified on the first page of the report) borrower or designated contact to make an appointment to enter the property.  I agree to immediately report any unauthorized contacts either personally by phone or electronically to LRES.

Main File No. REDAC   Page #12

REDA

File No. REDACTE

## Market Conditions Addendum to the Appraisal Report

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 7902 La Casa Way | City Buena Park | State CA | ZIP Code 90620 |
|---|---|---|---|---|

| Borrower | Richard & Lori Bowen |
|---|---|

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 29 | 20 | 11 | Increasing | ☒ Stable | Declining |
| Absorption Rate (Total Sales/Months) | 4.83 | 6.67 | 3.67 | Increasing | ☒ Stable | Declining |
| Total # of Comparable Active Listings | 5 | 2 | 0 | ☒ Declining | Stable | Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 1.0 | 0.3 | 0 | ☒ Declining | Stable | Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | $585,000 | $596,500 | $595,000 | Increasing | ☒ Stable | Declining |
| Median Comparable Sales Days on Market | 10 | 7 | 24 | Declining | ☒ Stable | Increasing |
| Median Comparable List Price | $569,999 | $604,500 | 0 | Increasing | ☒ Stable | Declining |
| Median Comparable Listings Days on Market | 61 | 130 | 0 | Declining | ☒ Stable | Increasing |
| Median Sale Price as % of List Price | 100.08% | 100.18% | 99.20% | Increasing | ☒ Stable | Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | Yes | ☒ No | | Declining | ☒ Stable | Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.)      The appraiser noted no apparent sales concessions to be paid on behalf of the buyers within the subjects defined market area.

Are foreclosure sales (REO sales) a factor in the market?   Yes  ☒ No   If yes, explain (including the trends in listings and sales of foreclosed properties).
The appraiser notes that Foreclosure sales are noted within the subjects market area. The use of Foreclosure sales were not utilized within the subjects appraisal report. The appraiser notes that Foreclosures, Short Sales, and REO sales are noted to be selling below market value as compared to Standard Arms Lenth Sales noted in the subject market area.

Cite data sources for above information.   MLS, Realist.com and the Appraisers knowledge of this immediate market area.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
The above mentioned information was obtained from MLS, and Realist.com. The appraiser deems the information to be reliable, though does not warrant it's accuracy.

The appraiser notes that the subjects immediate market neighborhood as defined in the appraisal neighborhood boundaries has recently seen a stabilizing of values.The "Median" Comparable Sales Price" as reported by the MLS and Realist.com is stable and the "Median Comparable Listing Price" is stable as noted above, within the past 12 months.

The appraiser notes that the "Median" as reported above is in fact an average.

| If the subject is a unit in a condominium or cooperative project, complete the following:   N/A | | Project Name: N/A | | | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | N/A | | | Increasing | Stable | Declining |
| Absorption Rate (Total Sales/Months) | | | | Increasing | Stable | Declining |
| Total # of Active Comparable Listings | | | | Declining | Stable | Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | Declining | Stable | Increasing |

Are foreclosure sales (REO sales) a factor in the project?   Yes   No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.   N/A

Summarize the above trends and address the impact on the subject unit and project.   N/A

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name | Robert F. Wilson CRA SCA | Supervisory Appraiser Name | |
| Company Name | Express Appraisal | Company Name | |
| Company Address | P.O. Box 337, Bellflower, CA 90706 | Company Address | |
| State License/Certification # | AR009326   State  CA | State License/Certification # | State |
| Email Address | robert@expressappraisal.com | Email Address | |

| Freddie Mac Form 71   March 2009 | Page 1 of 1 | Fannie Mae Form 1004MC   March 2009 |
|---|---|---|

Form 1004MC2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Comparable Data Pool - Page 1**

### Residential Agent 1 Line

| Distance | Listing ID | MLS Type | Unit Name | City | Area | TOC | List Price | Lst Sqft | $/m2 | $/m2 | Sqft | $/m2/Sqft | BD/Room | # Prkg | Date | MLS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Comparable Data Pool – Page 2**

| Data no | Listing ID | S Subj Type | Subj Or Name | Cty | Area | SLC | LIC Price | $/SqFt | BaYer | SqFt | Y-Built | AcY/SqFt | DOM/CDOM | e | HP RAC | Date | MLS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0.7 mi | 46 | PW16741590 | S SFR/D | 6833 Drive Ave | SP | 82 | STD | $385,000+ | $290.40 | 4/2,0,0,0 | 1994/A | 1975/ASA | 0.201849,789 | 19/ | | N N 2.5 | 01/13/17 | CRMLS M |
| 0.6 mi | 47 | PW17146255 | S SFR/D | 7900 Jul Festa Dr | SP | 82 | STD | $395,000+ | $274.92 | 3/1,1,0,0 | 1587/A | 1956/ASA | 0.15024,541 | 55 | | N N 3* | 10/27/17 | CRMLS M |
| 0.8 mi | 48 | PW17113879 | S SFR/D | 8833 Crescent Av | SP | 82 | STD | $396,000+ | $439.85 | 4/2,0,0,0 | 1355/A | 1955/ASA | 0.13774,000 | 15/ | | N Y 2 | 07/31/17 | CRMLS M |
| 0.8 mi | 49 | PW17162172 | S SFR/D | 7452 Cypress Dr | SP | 82 | STD | $397,000+ | $396.53 | 4/1,1,0,0 | 1496/A | 1962/ASA | 0.13774,000 | 45 | | N N 3* | 09/21/17 | CRMLS M |
| 0.6 mi | 50 | OC17361881 | S SFR/D | 5903 Los Encinos St | SP | 82 | STD | $400,000 | $421.94 | 3/2,0,0,0 | 1422/A | 1955/APP | 0.149,400 | 15/ | | N N 2.5 | 12/21/17 | CRMLS M |
| 0.3 mi | 51 | PW16180045 | S SFR/D | 6295 Paseo Encino St | SP | 82 | STD | $400,000+ | $321.72 | 4/3,0,0,0 | 1865/A | 1955/ASA | 0.13844,000 | 157/1 | | N N 2.508 | 01/13/17 | CRMLS M |
| 0.5 mi | 52 | PW17087679 | S SFR/A | 5297 Las Palmas St | SP | 82 | STD | $425,000+ | $366.32 | 4/2,0,0,0 | 1538/A | 1968/PUB | 0.13349,788 | 5/5 | | Y N 2 | 05/12/17 | CRMLS M |
| 0.6 mi | 53 | PW17038037 | S SFR/A | 8477 San Cristobal Way | SP | 82 | STD | $426,900+ | $361.94 | 4/2,0,0,0 | 1684/A | 1955/ASA | 0.13776,000 | 15/4 | | N Y 2 | 02/27/17 | CRMLS M |
| 0.7 mi | 54 | OC17175307 | S SFR/D | 5784 Vly Ave | SP | 82 | STD | $428,000+ | $322.43 | 3/2,0,0,0 | 1828/A | 1957/ASA | 0.13776,000 | 15/ | | N N 2.5 | 08/25/17 | CRMLS M |
| 0.1 mi | 55 | PW17090676 | S SFR/D | 6162 Sunset Dr | SP | 82 | STD | $439,000+ | $349.17 | 4/2,0,0,0 | 1747/A | 1956/ASA | 0.117,405 | 4/4 | | N N 2.5 | 04/28/17 | CRMLS M |
| 0.6 mi | 56 | PW17132779 | S SFR/D | 7837 La Piedra Dr | SP | 82 | STD | $438,000+ | $408.93 | 3/1,1,0,0 | 1495/A | 1956/ASA | 0.13776,000 | 51/51 | | N N 2.5* | 09/26/17 | CRMLS M |
| 0.3 mi | 57 | OC17090620 | S SFR/D | 7702 Los Padres Dr | SP | 82 | STD | $441,000+ | $419.82 | 4/2,0,0,0 | 1497/A | 1962/ASA | 0.143264,340 | 7/7 | | N N 2.5 | 05/26/17 | CRMLS M |
| 0.6 mi | 58 | PW17063849 | S SFR/D | 6485 San Fernando Wr | SP | 82 | STD | $449,000+ | $446.34 | 4/1,1,0,0 | 1480/A | 1959/ASA | 0.149,500 | 12/5 | | N Y 2.5 | 03/27/17 | CRMLS M |
| 0.6 mi | 59 | OC17147962 | S SFR/D | 7960 La Piedra Dr | SP | 82 | STD | $429,000+ | $325.86 | 3/1,1,0,0 | 1846/A | 1956/PUB | 0.15024,541 | 15/4 | | Y N 3 | 09/21/17 | CRMLS M |
| 0.4 mi | 60 | OC17135020 | S SFR/D | 8230 San Ramon Ct | SP | 82 | STD | $439,000+ | $381.41 | 3/2,0,0,0 | 1564/OTH | 1970/ASA | 0.1527/49,400 | 32/12 | | Y Y 2.5 | 04/06/17 | CRMLS M |
| 0.4 mi | 61 | OC17118320 | S SFR/D | 6099 Mountain Av | SP | 82 | STD | $445,000+ | $458.71 | 3/2,0,0,0 | 1364/A | 1961/ASA | 0.17627,590 | 2/2 | | N Y 2.5 | 06/19/17 | CRMLS M |
| 0.4 mi | 62 | PW16702461 | S SFR/D | 6293 Ca Vi Wr | SP | 82 | STD | $445,000+ | $341.16 | 5/3,0,0,0 | 1632/A | 1961/PUB | 0.13776,000 | 113/113 | | N N 2.000 | 01/11/17 | CRMLS M |
| 0.5 mi | 63 | OC17096137 | S SFR/D | 6350 Los Cerritos Dr | SP | 82 | STD | $447,300+ | $396.15 | 3/1,1,0,0 | 1984/A | 1970/ASA | 0.143549,750 | 4/4 | | N N 2.5 | 07/06/17 | CRMLS M |
| 0.6 mi | 64 | OC17141092 | S SFR/D | 6000 San Raphael Wr | SP | 82 | STD | $429,000+ | $425.49 | 4/2,0,0,0 | 1402/A | 1959/ASA | 0.149,520 | 7/7 | | Y Y 2.5 | 07/26/17 | CRMLS M |
| 0.4 mi | 65 | OC17060282 | S SFR/D | 8063 Cyr Highland St | SP | 82 | STD | $432,000+ | $441.34 | 3/2,0,0,0 | 1432/A | 1955/ASA | 0.19664,832 | 5/5 | | N N 2.5 | 04/06/17 | CRMLS M |
| 0.3 mi | 66 | PW17202966 | S SFR/D | 7870 La Piedra Dr | SP | 82 | STD | $435,000+ | $387.42 | 3/2,0,0,0 | 1636/A | 1956/PUB | 0.17667,788 | 24/24 | | Y N 2 | 11/15/17 | CRMLS M |
| 0.3 mi | 67 | PW17197685 | S SFR/D | 6472 La Jia St | SP | 82 | STD | $436,000+ | $470.05 | 4/2,0,0,0 | 1355/A | 1958/ASA | 0.13776,000 | 5/5 | | N N 2.5 | 11/01/17 | CRMLS M |
| 0.6 mi | 68 | N517095217 | S SFR/D | 7861 La Piedra Dr | SP | 82 | STD | $439,000 | $326.32 | 3/2,0,0,0 | 1930/A | 1956/ASA | 0.16064,995 | 23/23 | | N Y 2 | 03/21/17 | CRMLS M |
| 0.7 mi | 69 | PW17142572 | S SFR/D | 6070 San Rae St | SP | 82 | STD | $436,000+ | $347.28 | 3/2,0,0,0 | 1842/A | 1959/ASA | 0.13819,050 | 59/59 | | Y N 2.5 | 10/20/17 | CRMLS M |
| 0.3 mi | 70 | OC17302009 | S SFR/D | 8003 San Mariano Circle | SP | 82 | STD | $445,000+ | $318.83 | 4/3,0,0,0 | 2023/P | 1962/PUB | 0.1765/338,025,800 | 1/1 | | Y N 3.5 | 07/02/17 | CRMLS M |
| 0.7 mi | 71 | N517063609 | S SFR/D | 8031 La Vista Dr | SP | 82 | STD | $455,000+ | $438.42 | 4/2,0,0,0 | 1994/A | 1955/ASA | 0.13776,000 | 7/7 | | N Y 2 | 05/26/17 | CRMLS M |
| 0.5 mi | 72 | PW17156782 | S SFR/D | 8573 San Paz St | SP | 82 | STD | $465,000+ | $334.35 | 4/2,0,0,0 | 1999/A | 1958/ASA | 0.13846,800 | 32/32 | | N N 2.5 | 09/11/17 | CRMLS M |
| 0.4 mi | 73 | R517107409 | S R SFR/D | 5845 La Hacienda | SP | 609 | STD | $396,000+ | $436.93 | 4/2,0,0,0 | 1370/A | 1955/ASA | 0.14254,207 | 13/14 | | N N 2.5 | 07/27/17 | CRMLS M |

SCNRLS: Information is believed to be accurate, but shall not be relied upon without verification
Accuracy of square footage, lot size and other information is not guaranteed.

expressappraisal.com                                      Main File No. REDAC   | Page #15

## FIRREA / USPAP ADDENDUM

| | |
|---|---|
| Borrower/Client | Richard & Lori Bowen |
| Property Address | 7902 La Casa Way |
| City | Buena Park | County | Orange | State | CA | Zip Code | 90620 |
| Lender | The Law Offices of Michelle Ghidotti |

**Purpose**

The appraisal is for the purpose of a federally related mortgage loan.

**Scope**

The appraisal is based on information gathered during an inspection and from information obtained from the tax assessor's records. This analysis also consisted of a study of the immediate neighborhood and the general area. In addition, the County Assessor's records, numerous real estate data sources, and my own office files were researched for data which were used to arrive at the opinion of value.

**Intended Use / Intended User**

The Intended Use of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report from, and Definition of Market Value. No additional Intended Users are identified by the Appraiser.

**History of Property**

Current listing information:   The subject property has not been listed within the recent defined past.

Prior sale:   The subject property has not had prior sales and transfer activity within the recent defined past.

**Exposure Time / Marketing Time**

Marketing time for the appraisal property is estimated to be 1-90 days.
A reasonable exposure time for the subject property developed independently from the stated marketing time is 10-90 days.
This is normal for this neighborhood under current market conditions.

**Personal (non-realty) Transfers**

Personal property is not included in the Final Opinion of Value.

**Additional Comments**

1. The appraisal was prepared in conformity with Uniform Standards of Professional Appraisal Practice.
2. The date of the appraisal and preparation date do not coincide.
3. The absence of any of the approaches to value is fully explained in the report (see page two of the addenda).
4. Any creative financing or sales concessions that the appraiser is aware of have been adjusted for in the Direct Sales Comparison Report.
5. Neither the appraisal assignment, compensation therefore, nor future employment is contingent upon a predetermined value or direction in value that favors the client. The appraiser has no present or contemplated financial interest in the loan transaction and does not stand to benefit in any way from the value placed on the property.
6. The opinion of value is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions unless otherwise stated in this report. The Appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The Appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively unless otherwise stated in this report. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous substances or detrimental environmental conditions on or around the property that would negatively affect its value.
7. In regards to the cost approach, no one including the intended user or 3rd party should rely on these figures for insurance purposes.
8. The appraiser certifies and agrees that this appraisal was prepared in accordance with the requirements of title XI of the financial institutions reform and enforcement(Firrea) of 1989, as amended(12 U.S.C. 3331 ET Seq.), and any applicable implementing regulations in effect at the time the appraiser signs the appraisal certification.

**Certification Supplement**

1. This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or an approval of a loan.
2. My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.

Appraiser(s): Robert F. Wilson CRA SCA

Effective date / Report date:          12/22/2017

Supervisory Appraiser(s):

Effective date / Report date:

Main File No. REDAC    Page #16
270778
File No.  5001015639

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

### Condition Ratings and Definitions

**C1**

The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*\*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2**

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

**C3**

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

**C4**

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

**C5**

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

**C6**

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

### Quality Ratings and Definitions

**Q1**

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3**

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
### (Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

**Quality Ratings and Definitions (continued)**

**Q5**
Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**
Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

**Definitions of Not Updated, Updated, and Remodeled**

**Not Updated**

Little or no updating or modernization. This description includes, but is not limited to, new homes.
Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

**Updated**

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.
An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

**Remodeled**

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.
A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

**Explanation of Bathroom Count**

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

**Example:**
3.2 indicates three full baths and two half baths.

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

**Abbreviations Used in Data Standardization Text**

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

**Other Appraiser-Defined Abbreviations**

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## Appraiser Independence Certification

I do hereby certify, I have followed the appraiser independence safeguards in compliance with Appraisal Independence and any applicable state laws I may be required to comply with. This includes but is not limited to the following:

- I am currently licensed and/or certified by the state in which the property to be appraised is located My license is the appropriate license for the appraisal assignment(s) and is reflected on the appraisal report.
- I certify that there have been no sanctions against me for any reason that would impair my ability to perform appraisals pursuant to the required guidelines.

I assert that no employee, director, officer, or agent of _____Lres_____, or any other third party acting as joint venture partner, independent contractor, appraisal management company, or partner on behalf of _____The Law Offices of Michelle Ghidotti_____, influenced, or attempted to influence the development, reporting, result, or review of my appraisal through coercion, extortion, collusion, compensation, inducement, intimidation, bribery, or in any other manner.

I further assert that _____Lres_____ has never participated in any of the following prohibited behavior in our business relationship:

1) Withholding or threatening to withhold timely payment or partial payment for an appraisal report;

2) Withholding or threatening to withhold future business with me, or demoting or terminating or threatening to demote or terminate me;

3) Expressly or impliedly promising future business, promotions, or increased compensation for myself;

4) Conditioning the ordering of my appraisal report or the payment of my appraisal fee or salary or bonus on the opinion, conclusion, or valuation to be reached, or on a preliminary value estimate requested from me;

5) Requesting that I provide an estimated, predetermined, or desired valuation in an appraisal report prior to the completion of the appraisal report, or requesting that I provide estimated values or comparable sales at any time prior to my completion of an appraisal report;

6) Provided me an anticipated, estimated, encouraged, or desired value for a subject property or a proposed or target amount to be loaned to the borrower, except that a copy of the sales contract for purchase transactions may be provided;

7) Provided to me, or my appraisal company, or any entity or person related to me as appraiser, appraisal company, stock or other financial or non-financial benefits;

8) Any other act or practice that impairs or attempts to impair my independence, objectivity, or impartiality or violates law or regulation, including, but not limited to, the Truth in Lending Act (TILA) and Regulation Z, or the USPAP.

| | |
|---|---|
| **Signature** | 04/25/2018 |
| | **Date** |
| Robert F. Wilson CRA SCA | AR009326 |
| **Appraiser's Name** | **State License or Certification #** |
| | 08/31/2019                                 CA |
| **State Title or Designation** | **Expiration Date of License or Certification        State** |

7902 La Casa Way, Buena Park, CA 90620
**Address of Property Appraised**

05/13

Main File No. PEDAC    Page #20

Appraiser License



Business, Consumer Services & Housing Agency

# BUREAU OF REAL ESTATE APPRAISERS
## REAL ESTATE APPRAISER LICENSE

### Robert Wilson

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title:

"Certified Residential Real Estate Appraiser"

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

BREA APPRAISER IDENTIFICATION NUMBER:     AR 009326

Effective Date:      September 1, 2017
Date Expires:      August 31, 2019

Jim Martin, Bureau Chief, BREA

3036207

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD UP TO LIGHT TO SEE "CHAIN LINK"

Form SCNLGL — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

E & O

**GREATAMERICAN.**
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

**DECLARATIONS**
for
**REAL ESTATE APPRAISERS**
**ERRORS & OMISSIONS INSURANCE POLICY**

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED
AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

Insurance is afforded by the company indicated below: (A capital stock corporation)

☒  Great American Assurance Company

Note: The Insurance Company selected above shall herein be referred to as the Company.

Policy Number:   RAP3365365-17            Renewal of:   RAP3365365-16

Program Administrator:   Herbert H. Landy Insurance Agency Inc.
                         75 Second Ave Suite 410  Needham, MA 02494-2876

Item 1. Named Insured:   Robert F Wilson

Item 2. Address:            17434 Clark Ave
        City, State, Zip Code:   Bellflower, CA 90706

Item 3. Policy Period: From   05/01/2017   To   05/01/2018
                              *(Month, Day, Year)*   *(Month, Day, Year)*
        (Both dates at 12:01 a.m. Standard Time at the address of the Named Insured as stated in Item 2.)

Item 4. Limits of Liability:

    A. $ __1,000,000__ Damages Limit of Liability – Each Claim

    B. $ __1,000,000__ Claim Expenses Limit of Liability - Each Claim

    C. $ __1,000,000__ Damages Limit of Liability – Policy Aggregate

    D. $ __1,000,000__ Claim Expenses Limit of Liability – Policy Aggregate

Item 5. Deductible (Inclusive of Claim Expenses):

    A. $ __500__ Each Claim

    B. $ __1,000__ Aggregate

Item 6. Premium: $   895.00

Item 7. Retroactive Date (if applicable):   05/01/2001

Item 8. Forms, Notices and Endorsements attached:
        D42100 (03/15)  D42300 CA (10/13)
        D42408 (05/13)  D42402 (05/13)  IL7324 (08/12)

_Betsy a Wagner_
Authorized Representative

D12101 (03/15)                                    Page 1 of 1

## Location Map

| Borrower/Client | Richard & Lori Bowen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | | | |
| City | Buena Park | | County | Orange | State | CA | Zip Code | 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | | | |



## Plat Map

Borrower/Client: Richard & Lori Bowen
Property Address: 7902 La Casa Way
City: Buena Park    County: Orange    State: CA    Zip Code: 90620
Lender: The Law Offices of Michelle Ghidotti



Form MAP.PLAT — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Aerial Map**

| Borrower/Client | Richard & Lori Bowen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | | | |
| City | Buena Park | County | Orange | State | CA | Zip Code | 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | | | |



Main File No. REDAC   | Page #25|

## Building Sketch

| Borrower/Client | Richard & Lori Bowen | | | | |
|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | |
| City | Buena Park | County Orange | | State CA | Zip Code 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | |



TOTAL Sketch by a la mode, inc.

**Area Calculations Summary**

| Living Area | | Calculation Details | |
|---|---|---|---|
| Subject Dwelling | 1604 Sq ft | 23 × 12 = | 276 |
| | | 39 × 31 = | 1209 |
| | | 7 × 17 = | 119 |
| **Total Living Area (Rounded):** | **1604 Sq ft** | | |
| **Non-living Area** | | | |
| Covered Patio | 108 Sq ft | 9 × 12 = | 108 |
| Covered Patio | 144 Sq ft | 12 × 12 = | 144 |
| Covered Porch | 154 Sq ft | 7 × 22 = | 154 |
| 2 Car Attached | 420 Sq ft | 21 × 20 = | 420 |
| Workshop | 360 Sq ft | 18 × 20 = | 360 |

Main File No. REDAC | Page #26

**Property Profile Report**

**Property Location**

| | | | | | |
|---|---|---|---|---|---|
| **Address:** | 7902 LA CASA WAY | **City:** | BUENA PARK | **Zip:** | 90620-2319 |
| **APN#:** | 263-361-14 | **Use Code:** | Single Family Residence | **County:** | Orange |
| **Tract:** | 2397 | **Census Tract:** | 1103.01 | **Zone:** | |
| **Map Page/Grid:** | 767/ E3 | **Legal Desc:** | N-TRACT: 2397 BLOCK: LOT: 69 | | |
| **Total Assessed Value:** | 277,880 | **Tax Amount:** | 3,410.26 | | |
| **Percent Improvement:** | 0.32 | **Tax Year:** | 2017 | | |

**Current Owner Information**

| | | | |
|---|---|---|---|
| **Current Owner:** | BOWEN,LORI L & RICHARD H | **Owner Address:** | 7902 LA CASA WAY |
| **City, State, Zip:** | BUENA PARK, CA, 90620-2319 | **Owner Occupied:** | Yes |
| **Last Transaction: Amount:** | 12/12/2006 | **Deed Type:** | deed of trust |
| | | **Document:** | 0000831958 |

**Last sale Information**

| | | | |
|---|---|---|---|
| **Transferred From:** | BECKER,RANDALL F & CYNTHIA V | **Seller Address:** | |
| **Recording / Sale Date:** | 04/08/1998 / | **Prior Recording / Sale Date:** | 03/27/1992 / |
| **Most Recent Sale Price:** | 194,000 | **Prior Sale Price:** | 200,000 |
| **Document Number:** | 0000207603 | **Prior Document No.:** | 0000187054 |
| **Document Type:** | high liability | **Prior Document Type:** | high liability |

**Lender Information**

| | | | |
|---|---|---|---|
| **Lender:** | DITECH FUNDING CORP | **Full/Partial:** | F |
| **Loan Amount / 2nd Trust Deed:** | 242,500 / 0 | **Loan Type:** | conventional fix |

**Physical Information**

| | | | | | |
|---|---|---|---|---|---|
| **Building Area:** | 1,695 | **# of Bedrooms:** | 2 | **Lot Size:** | 6,500 |
| **Additional:** | 0 | **# of Bathrooms:** | 2.00 | **Year Built / Effective:** | 1955 / 1955 |
| **Garage:** | 760 | **# of Stories:** | 0 | **Heating:** | |
| **First Floor:** | 0 | **Total Rooms:** | 7 | **Cooling:** | |
| **Second Floor:** | 0 | **# of Units:** | 1 | **Roof Type:** | |
| **Third Floor:** | 0 | **Garage/Carport:** | Yes / | **Construction/Quality:** | Primary Material Unlisted / 0 |
| **Basement Finished:** | 0 | **Fireplaces:** | 0 | **Building Shape:** | |
| **Basement Unfinished:** | 0 | **Pool/Spa:** | No | **View:** | |

©2018 Copyright NDCdata.com All Rights Reserved. **National Data Collective Inc.**

### Subject Photo Page

| Borrower/Client | Richard & Lori Bowen | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | | |
| City | Buena Park | County | Orange | State | CA | Zip Code  90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | | |



**Subject Front**

7902 La Casa Way
Sales Price
Gross Living Area      1,604
Total Rooms            6
Total Bedrooms         2
Total Bathrooms        2.0
Location               N;Res;
View                   N;Res;
Site                   6500 sf
Quality                Q4
Age                    63



**Subject Rear**



**Subject Street**

Main File No. REDAC  | Page #28

## Photograph Addendum

| Borrower/Client | Richard & Lori Bowen | | | | |
|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | |
| City | Buena Park | County Orange | | State CA | Zip Code 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | |




**Alternate Street Scene**

**The Subject Property Fronts a Residential Street with Residential Properties in the Beyond**




**Side of Dwelling**

**Side of Dwelling**




**Water Heater**
**Properly Strapped with Downpipe attached to Pressure relief Valve**

**2 Car Garage &**
**attached Workshop/Storage Area**

Main File No. REDAC | Page #29

## Photograph Addendum

| Borrower/Client | Richard & Lori Bowen | | | | |
|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | |
| City | Buena Park | County Orange | | State CA | Zip Code 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | |



**Covered Side Patio Area**



**Rear Yard with Covered Patio Area**



**Above Ground Spa / NVG**



**Living Room**



**Dining Area**



**Kitchen**

### Photograph Addendum

| Borrower/Client | Richard & Lori Bowen | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | | |
| City | Buena Park | County | Orange | State | CA | Zip Code | 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | | |



Breakfast Area



Family Room



Indoor Laundry Area



Bathroom



CO/Smoke Detector



Den

Main File No. REDAC | Page #31

### Photograph Addendum

| Borrower/Client | Richard & Lori Bowen | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | | |
| City | Buena Park | County Orange | | State CA | Zip Code 90620 | |
| Lender | The Law Offices of Michelle Ghidotti | | | | | |



**Bedroom**



**Bedroom**



**Bathroom**



**Per the owner the subject property is noted to have roof damage / The appraiser did not notice any water marks on interior damage**



**CO/Smoke Detector**



**Chipped Paint & Dryrot on Exterior Wood Trim**

Main File No. PEDAC   Page #32

## Photograph Addendum

| Borrower/Client | Richard & Lori Bowen | | | | |
|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | |
| City | Buena Park | County Orange | | State CA | Zip Code 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | |



**Chipped Paint, Stucco, & Cracks on Exterior Fence**



**Chipped Paint, Stucco, & Cracks on Exterior Fence**





**Chipped Paint & Dryrot on Exterior Wood Trim
Chipped Paint & Stucco on Exterior Wall**



**Chipped Paint & Stucco on Exterior Wall**



**Chipped Paint & Dryrot on Exterior Wood Trim
Chipped Paint & Stucco on Exterior Wall**



**Chipped Paint & Stucco on Exterior Wall**

## Photograph Addendum

| Borrower/Client | Richard & Lori Bowen | | | | |
|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | |
| City | Buena Park | County Orange | | State CA | Zip Code 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | |



**Chipped Paint & Stucco on Exterior Wall**



**Chipped Paint, Stucco, & Cracks on Exterior Fence**



**Chipped Paint & Stucco on Exterior Wall**



**Chipped Paint & Stucco on Exterior Wall**



**Chipped Paint & Stucco on Exterior Wall**



**Chipped Paint & Dryrot on Exterior Wood Trim
Chipped Paint & Stucco on Exterior Wall**

## Photograph Addendum

| Borrower/Client | Richard & Lori Bowen | | | | |
|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | |
| City | Buena Park | County | Orange | State CA | Zip Code 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | |




**Chipped Paint & Stucco on Exterior Wall**

**Chipped Paint & Dryrot on Exterior Wood Trim
Chipped Paint & Stucco on Exterior Wall**




**Chipped Paint & Dryrot on Exterior Wood Trim**

**Chipped Paint & Dryrot on Exterior Wood Trim**





**Chipped Paint & Dryrot on Exterior Wood Trim**

**Chipped Paint & Dryrot on Exterior Wood Trim**

**Comparable Photo Page**

| Borrower/Client | Richard & Lori Bowen | | | | |
|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | |
| City | Buena Park | County Orange | | State CA | Zip Code 90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | |



**Comparable 1**

5932 Los Encinos St
| | |
|---|---|
| Prox. to Subject | 0.74 miles SW |
| Sale Price | 600,000 |
| Gross Living Area | 1,422 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 6100 sf |
| Quality | Q4 |
| Age | 63 |



**Comparable 2**

7837 La Habra Cir
| | |
|---|---|
| Prox. to Subject | 0.57 miles E |
| Sale Price | 610,000 |
| Gross Living Area | 1,495 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 6000 sf |
| Quality | Q4 |
| Age | 62 |



**Comparable 3**

8032 San Lazaro Cir
| | |
|---|---|
| Prox. to Subject | 0.19 miles SE |
| Sale Price | 569,000 |
| Gross Living Area | 1,455 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 6000 sf |
| Quality | Q4 |
| Age | 63 |

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | Richard & Lori Bowen |
| Property Address | 7902 La Casa Way |
| City | Buena Park |

| County | Orange | State | CA | Zip Code | 90620 |
|---|---|---|---|---|---|

| Lender | The Law Offices of Michelle Ghidotti |
|---|---|



**Comparable 4**

6162 San Lorenzo Dr
| | |
|---|---|
| Prox. to Subject | 0.21 miles S |
| Sales Price | 610,000 |
| Gross Living Area | 1,747 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 7200 sf |
| Quality | Q4 |
| Age | 62 |



**Comparable 5**

5771 Los Arcos Way
| | |
|---|---|
| Prox. to Subject | 0.48 miles SW |
| Sales Price | 575,000 |
| Gross Living Area | 1,724 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 6000 sf |
| Quality | Q4 |
| Age | 63 |



**Comparable 6**

6129 MacArthur Way
| | |
|---|---|
| Prox. to Subject | 0.24 miles NW |
| Sales Price | 639,900 |
| Gross Living Area | 1,948 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 6100 sf |
| Quality | Q4 |
| Age | 57 |

Main File No. REDAC | Page #37

## Comparable Photo Page

| Borrower/Client | Richard & Lori Bowen | | | | |
|---|---|---|---|---|---|
| Property Address | 7902 La Casa Way | | | | |
| City | Buena Park | County  Orange | | State  CA | Zip Code  90620 |
| Lender | The Law Offices of Michelle Ghidotti | | | | |



### Comparable 7

6042 San Yuba Way
| | |
|---|---|
| Prox. to Subject | 0.34 miles SW |
| Sales Price | 647,888 |
| Gross Living Area | 1,717 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 6000 sf |
| Quality | Q4 |
| Age | 63 |

### Comparable 8

| | |
|---|---|
| Prox. to Subject | |
| Sales Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

### Comparable 9

| | |
|---|---|
| Prox. to Subject | |
| Sales Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

## CONSTRUCTION PROPOSAL

Company Name
Chiseled Stone Masonry



Date:   10/25/2017
Project Primary Full Address
7902 La Casa Way
Buena Park, CA

Company Full Address
7752 Ronald Dr.
Huntington Beach, CA, 92647

Company Phone– (949) 228-5822

**Construction Proposal – Page 2**

## PROPOSAL

Date:    10/25/2017

Between Owner:    Richard Bowen
7902 La Casa Way, Buena Park, CA

And the Contractor:    Chiseled Stone Masonry
7752 Ronald Dr. Huntington Beach, CA, 92647
LIC# 1009130
Phone: (949) 228-5822
Email: chiseledstonemasonryhb@gmail.com

For the Project:    Owner's Residence

### ABBREVIATIONS:

CSM = Chiseled Stone Masonry, CMU = Concrete Masonry Unit

SF = Square Foot, CF = Cubic Foot, CY = Cubic Yard, LF = Linear Foot

### SCOPE OF WORK AND SPECIFICATIONS:

1.1.    SCOPE:

a.   Demo, haul, and dispose of 485 SF CMU.

b.   Install 485 SF CMU size to match existing and color will be standard grey.

c.   All damaged panels to be cut free with 14" wet diamond blade prior to demo to avoid strain and stress on adjacent panels. New panels to have a hard connection to existing with two #4 rebar at initial and top of wall with a minimum splice of 30".

d.   Stucco 694 SF, integral color and texture to match existing. (Minimum 7 days wait post CMU installation)

e.   Prime and paint 276 SF CMU color to be matched electronically. (Can be applied 28 days post CMU installation).

**Construction Proposal – Page 3**

1.2.   **Concrete:** Min. 2500 psi strength in 28 days.  Mix for concrete footing to be 1 part cement to 2-1/2 parts sand to 3-1/2 parts gravel with a maximum of 7-1/2 gallons of water per sack of cement.

1.3.   **Block:**  Grade "N" ASTM C 90-03. Nominal width of units shall be a min. 6".

1.4.   **Reinforcement:** Deformed steel bar conforming to ASTM A-615 Grade 40 or Grade 60.

1.5.   **Mortar (Type "S"):** Mix to be 1 part cement to ½ part lime to 3 parts damp loose sand.

1.6.   **Grout:** Mix to be 1 part cement to 3 parts sand to max. 1/10 part lime. Sufficient water should be added to produce consistency for pouring without segregation of the constituents. May contain 2 parts pea gravel (max. size 3/8").

**SPECIAL CONDITIONS:**

1.7.   CSM requires not deposit, although 2-3 satisfactory progress payments upon request. Final is due in full upon completion.

1.8.   CMU demo/install 7-10 days, stucco 3-4 days, and paint 2 days. There is a time delay between phases but it's the only way to insure stucco and paint will not bubble off by allowing the proper cure time.

**TOTAL BASE PRICE:**                                        $17,948.00

**BASE PRICE INCLUDES:**

1.9.   Labor

1.10.   Material

1.11.   CSM's hassle free guarantee

Main File No. REDAC   Page #41

**Construction Proposal – Page 4**

## WOOD DESTROYING PESTS AND ORGANISMS INSPECTION REPORT

| Building No. 7902 | Street La Casa Way | City Buena Park | Zip 90620 | Date of Inspection 10/17/2017 | Number of Pages 4 |
|---|---|---|---|---|---|

**Termite Science Inc.**
14621 Golders Green Lane
Westminster CA 92683
(714) 231-8257
bowter55@aol.com

Report # : 10215
Registration # : PR7139
Escrow # :
☐ CORRECTED REPORT

| Ordered by: Bowen 7902 La Casa Way Buena Park CA 92620 United States | Property Owner and/or Party of Interest: Bowen 7902 La Casa Way Buena Park CA 92620 United States | Report sent to: Bowen 7902 La Casa Way Buena Park CA 92920 United States |
|---|---|---|

COMPLETE REPORT ☐    LIMITED REPORT ☒    SUPPLEMENTAL REPORT ☐    REINSPECTION REPORT ☐

GENERAL DESCRIPTION:
One-story single family residence of frame and stucco, composition roof, slab/raised construction, occupied/furnished, attached garage.

Inspection Tag Posted: Garage
Other Tags Posted:

An inspection has been made of the structure(s) shown on the diagram in accordance with the Structural Pest Control Act. Detached porches, detached steps, detached decks and any other structures not on the diagram were not inspected.

Subterranean Termites ☐    Drywood Termites ☒    Fungus / Dryrot ☒    Other Findings ☐    Further Inspection ☒

If any of the above boxes are checked, it indicates that there were visible problems in accessible areas. Read the report for details on checked

**Diagram Not To Scale**

Inspected By:  Michael Powers   State License No.   OPR9690   Signature:

You are entitled to obtain copies of all reports and completion notices on this property reported to the Structural Pest Control Board during the preceding two years. To obtain copies contact: Structural Pest Control Board, 2005 Evergreen Street, Suite 1500, Sacramento, California, 95815-3831.
NOTE: Questions or problems concerning the above report should be directed to the manager of the company. Unresolved questions or problems with services performed may be directed to the Structural Pest Control Board at (916) 561-8708, (800) 737-8188 or www.pestboard.ca.gov.
43M-44 (Rev. 04/2015)

Main File No. RFD-AC | Page #42

**TERMITE SCIENCE INC.**

Page 2 of 4 Inspection report
Address of Property Inspected
7902
La Casa Way          Buena Park          CA          90620
                     City          State          Zip
Date of Inspection
10/17/2017
Corresponding Report No.          10215
Escrow No.

**WHAT IS A WOOD DESTROYING PEST & ORGANISM INSPECTION REPORT? READ THIS DOCUMENT, IT EXPLAINS THE SCOPE AND LIMITATIONS OF A STRUCTURAL PEST CONTROL INSPECTION AND A WOOD DESTROYING PEST & ORGANISM INSPECTION REPORT.**

A Wood Destroying Pest & Organism Inspection Report contains findings as to the presence or absence of evidence of wood destroying pests and organisms in visible and accessible areas and contains recommendations for correcting any infestations or infections found. The contents of Wood Destroying Pest & Organism Inspection Reports are governed by the Structural Pest Control Act (or Structural).

Some structures do not comply with building code requirements or may have structural, plumbing, electrical, mechanical, heating, air conditioning or other defects that do not pertain to wood destroying organisms. A Wood Destroying Pest & Organism Inspection Report does not contain information on such defects, if any, as they are not within the scope of the Pest Control Act and licenses of either this company or it's employees.

The Structural Pest Control Act requires inspection of only those areas which are visible and accessible at the time of inspection. Some areas of the structure are not accessible to inspection, such as the interior of hollow walls, spaces between floors, areas concealed by carpeting, appliances, furniture or cabinets. Infestations or infection may be active in these areas without visible and accessible evidence. If you desire information about areas that were not inspected, a further inspection may be performed at an additional cost. Carpets, furniture or appliances are not moved and windows are not opened during a routine inspection.

The exterior Surface of the roof was not inspected. If you want the water tightness of the roof determined, you should contact a roofing contractor who is licensed by the Contractor's State License Board.

This company does not certify or guarantee against any leakage, such as (but not limited to) plumbing, appliances, walls, doors, windows, any type of seepage, roof or deck coverings. This company renders no guarantee, whatsoever, against any infection, infestation or any other adverse condition which may exist in such areas or may become visibly evident in such area after this date. Upon request, further inspection of these areas would be performed at an additional charge.

In the event damage or infestation described herein is later found to extend further than anticipated, our bid will not include such repairs. OWNER SHOULD BE AWARE OF THIS CLOSED BID WHEN CONTRACTING WITH OTHERS OR UNDERTAKING THE WORK HIMSELF/HERSELF.

If requested by the person ordering this report, a re-inspection of the structure will be performed. Such requests must be within four (4) months of the date of this inspection. Every re-inspection fee amount shall not exceed the original inspection fee.

Wall paper, stain, or interior painting are excluded from our contract. New wood exposed to the weather will be prime painted, only upon request at an additional expense.

This company will reinspect repairs done by others within four months of the original inspection. A charge, if any, can be no greater than the original inspection fee for each reinspection. The reinspection must be done within ten (10) working days of request. The reinspection and if inspection of concealed areas is desired, inspection of work in progress will be necessary. Any guarantees must be received from parties performing repairs.

NOTICE: Reports on this structure prepared by various registered companies should list the same findings (i.e. termite infestations, termite damage, fungus damage, etc). However, recommendations to correct these findings may vary from company to company. You have a right to seek a second opinion from another company.

This Wood Destroying Pest & Organisms Report DOES NOT INCLUDE MOLD or any mold like conditions. No reference will be made to mold or mold-like conditions. Mold is not a Wood Destroying Organism and is outside the scope of this report as defined by the Structural Pest Control Act. If you wish your property to be inspected for mold or mold like conditions, please contact the appropriate mold professional.

**Construction Proposal – Page 6**

## TERMITE SCIENCE INC.

Page 3 of 4 inspection report
7902          La Casa Way                                    Buena Park                    CA              90620
Address of Property Inspected                                City                          State           Zip
10/17/2017                              10215
Date of Inspection                      Corresponding Report No.                                Escrow No.

SECTION I CONTAINS ITEMS WHERE THERE IS EVIDENCE OF ACTIVE INFESTATION, INFECTION OR CONDITIONS
THAT HAVE RESULTED IN OR FROM INFESTATION OR INFECTION.

SECTION II ITEMS ARE CONDITIONS DEEMED LIKELY TO LEAD TO INFESTATION OR INFECTION BUT WHERE NO
VISIBLE EVIDENCE OF SUCH WAS FOUND.

FURTHER INSPECTION ITEMS ARE DEFINED AS RECOMMENDATIONS TO INSPECT AREA(s) WHICH DURING THE
ORIGINAL INSPECTION DID NOT ALLOW THE INSPECTOR ACCESS TO COMPLETE HIS INSPECTION AND CANNOT
BE DEFINED AS SECTION I OR II.

### 2. DRYWOOD TERMITES:

**2A - Section I**
FINDING: Evidence of drywood termites was noted at family room and patio.
RECOMMENDATION: Remove or cover accessible drywood termite fecal pellets.
RECOMMENDATION: Fumigate the house and garage with an approved fumigant for the eradication of drywood termites.

### 3. FUNGUS / DRYROT:

**3A - Section I**
FINDING - Evidence of dryrot damage noted at the patio wood members.
RECOMMENDATION - Repair and/ or replace the dryrot damaged members noted in the above finding. This patio requires
complete demo and rebuild. Torch top roof to prevent any leaks. Shiplap or T-11 plywood sheathing is optional . Painting is
not included in this bid.
Thank you for selecting us to perform a structural pest control inspection on your property. Should you have any questions
regarding this report, please call us directly by the contact information provided on the first page of the inspection report.

Our inspectors have determined that your property will benefit from a safe application of chemicals commonly used for
structural pest control. In accordance with the laws and regulations of the State of California, we are required to provide you
and your occupants with the following information prior to any application of chemicals to such property.

Please take a few moments to read and become familiar with the content. State law requires that you be given the following
information:

CAUTION - PESTICIDES ARE TOXIC CHEMICALS. Structural pest control companies are registered and regulated by the
Structural Pest Control Board, and apply pesticides which are registered and approved for use by the California Department
of Food and Agriculture and the United States Environmental Protection Agency. Registration is granted when the state finds
that based on scientific evidence, there are no appreciable risks weighted by the benefits. The degree of risk depends on the
degree of exposure, so exposure should be minimized.

If within 24 hours following application, you experience symptoms similar to common seasonal illness comparable to the flu,
contact your physician or poison control center and your pest control operator immediately.

For further information, contact any of the following agencies in your area:

| | |
|---|---|
| Poison Control Center | (800) 222-1222 |
| Structural Pest Control Board | (916) 561-8700 |
| Agricultural Department | (714) 955-0100 |
| Health Department | (714) 834-8560 |
| Termite Science Inc | (714) 231-8257 |
| Poison Control Center | (800) 222-1222 |

**Construction Proposal – Page 7**

### TERMITE SCIENCE INC.

Page 4 of 4 inspection report

| | | | | |
|---|---|---|---|---|
| 7902        La Casa Way | | Buena Park | CA | 90620 |
| Address of Property Inspected | | City | State | Zip |
| 10/17/2017 | | | | |
| Date of Inspection | | Corresponding Report No | Escrow No. | |

| | |
|---|---|
| Orange County Health Department | (714) 433-6000 |
| Los Angeles County Health Dept. | (888) 700-9995 |
| Orange County Agricultural Commiss. | (714) 955-0100 |
| LA County Agricultural Commiss. | (562) 622-0402 |
| Structural Pest Control Board | (916) 263-2540 |

**Construction Proposal – Page 8**

**Termite Science Inc.**
14621 Golders Green Lane
Westminster CA 92683
(714) 231-8257
bowter55@aol.com

Page 1 of 1

## WORK AUTHORIZATION

Report #: 10215

No work will be performed until a signed copy of this agreement has been received.

Address of Property    7902    La Casa Way
City:    Buena Park
State/Zip:    CA    90620

The inspection report of the company dated _10/17/2017_ is incorporated herein by reference as though fully set forth.

The company is authorized to proceed with the work outlined in the items circled below from the Termite Inspection Report for the property inspected, for a total sum of $ _____    This total amount is due and payable within 3 days from completion repair work and/or chemical application.

**THE COMPANY AGREES**

To guarantee all repair completed by this company for one year from date of completion except for caulking, grouting, or plumbing, which is guaranteed for a period of ninety (90) days. We assume no responsibility for work performed by others, to be bound to perform the work for the price quoted in our cost breakdown for a period not to exceed 30 days, to use reasonable care in the performance of our work but to assume no responsibility for damage to any hidden pipes, wiring, or other facilities or to any shrubs, plants, or roof.

**THE OWNER OR OWNER'S AGENT AGREES**

To pay for services rendered in any additional services requested upon completion of work to pay a service charge of one and one-half percent (1 1/2%) interest per month, or portion of any month, annual interest rate of eighteen percent (18%) on accounts exceeding the ten (10) day full payment schedule. The Owner grants to The Company a security interest in the property to secure payment sum for work and inspection fee completed. In case of non-payment by The owner, reasonable attorney fees and costs of collection shall be paid by owner, whether suit be filed or not.

**ALL PARTIES AGREE**

If any additional work is deemed necessary by the local building inspector, said work will not be performed without additional authorization from owner or owner's agent. This contract price does not include the charge of any Inspection Report fees. Circle the items you wish performed by The Company, below and enter total amount above:

**NOTICE TO OWNER**

Under the California Mechanics Lien Law, any structural pest control company which contracts to do work for you, any contractor, subcontractor, laborer, supplier or other person who helps to improve your property, but is not paid for his or her work or supplies, has a right to enforce a claim against your property. This means that after a court hearing, your property could be sold by a court officer and the proceeds of the sale used to satisfy the indebtedness. This can happen even if you have paid your structural pest control company in full if the subcontractor, laborers or suppliers remain unpaid.

To preserve their right to file a claim or lien against your property, certain claimants such as subcontractors or material suppliers are required to provide you with a document entitled "Preliminary Notice." Prime contractors and laborers for wages do not have to provide this notice. A Preliminary Notice is not a lien against your property. Its purpose is to notify you of persons who may have a right to file a lien against your property if they are not paid.

### ITEMS

| Prefix | Section I | Section II | Further Inspection | Other |
|--------|-----------|------------|--------------------|-------|
| 2A | 1,985.00 | 0.00 | 0.00 | 0.00 |
| 3A | 3,600.00 | 0.00 | 0.00 | 0.00 |
| Total: | 5,585.00 | 0.00 | 0.00 | 0.00 |
| Grand Total: | 5,585.00 | | | |

Property Owner: _____    Date: _____    Inspected By: Michael Powers    Date: 10/19/2017

Owner's Agent: _____    Date: _____

**Construction Proposal - Page 9**

## SERVICE CHAMPIONS
Heating & Air Conditioning
★ ★ ★ ★ ★

(714/949) 777-7777
(800) 481-9949

Corporate Office
3150 East Birch
Brea, CA 92821

STATE LICENSE NO. 799170

## HOME IMPROVEMENT CONTRACT

Customer Name: Richard Bowman _____ Install Start Date: _____ Est. Completion Date _____

Address: 7902 La Casa Way _____ City, State, Zip Code: Buena Park CA 90620 _____

Phone Number (Home): _____ Arrival Time: _____

### NEW SYSTEM COMPONENTS

| | Basic | Silver | Gold | Plat. | Pres. | Size | |
|---|---|---|---|---|---|---|---|
| ☒ Air Conditioner | ✓ | | | | | 4.0 T | Asbestos    Y ⊙ N ○ |
| ☒ Furnace Upflow | ✓ | | | | | 4.0 T | Customer Initial ____ |
| ☐ Inside Cooling Coil Upflow | ✓ | | | | | 4.0 T | Duct System Recommended |
| ☐ Heat Pump | | | | | | N/A | Y ○ N ○ |
| ☐ Inside Air Handler / Coil | | | | | | N/A | Customer Initial ____ |
| ☐ Packaged Unit | | | | | | N/A | Insulation R38 or greater |
| | | | | | | | Y ○ N ⊙ |
| | | | | | | | Customer Initial |

10 Year(s) Mfg. Parts Warranty           10 Year(s) Mfg. Compressor Warranty
1 Year Labor Warranty (unless otherwise noted)  ☒ New Thermostat Digital
☒ Remove Existing Equipment & Debris from Premises  ☒ New Dual Wall Vent Pipe      20 Year(s) Mfg. Heat Exchanger Warranty
☒ Vibration Isolation Shock Absorbers   ☒ Lifetime Equipment Support Slab  ☐ New Condensate Pump
☒ Weatherproof Power Disconnect        ☒ New Ceiling Saver Kit        ☐ New Condensate Drain
☒ Electrical from Disconnect to Condenser  ☒ Earthquake Strapping      ☒ New CA Approved Gas Flex Connector
☒ Hardwire The Furnace                 ☒ Seal The Platform           ☒ New Emergency Gas Shut Off Valve
☒ State H.E.R.S. Testing               ☒ Refrigerant Recovered & Disposed of as  ☐ Opti-Sized Refrigerant Lines
☒ City Permit                            required by Clean Air Act      ☐ New Exterior Refrigerant Lines
                                                                       ☒ Exterior Refrigerant Line Enclosure

### AIR DISTRIBUTION, DUCTWORK, & INSULATION

☐ Superior 5" Air Filtration           ☐ Ultimate Energy Sealed Duct System   ☐ Blown in Insulation
☐ Supreme Air Purification System      ☐ Install Volume Control Dampers       ☐ Radiant Barrier
☐ Air Scrubber Plus                    ☐ New Supply Run(s)                    ☐ Attic Air Sealing
☐ New Corrosion Resistant Sup Register(s)  ☐ New Return(s)                    ☐ Insulation Removal
☐ New Corrosion Resistant RAG or RAFO(s)   ☒ Reconnect to Existing Ductwork   ☐ Zone Control System

### CUSTOMER QUALITY ASSURANCE GUARANTEES

○ YES ○ NO  100% Satisfaction Guarantee (B.S.G.P.)          ○ YES ○ NO  Installation Workmanship Guarantee (B.S.G.P.)
○ YES ○ NO  Better Than We Found It Guarantee (B.S.G.P.)    ○ YES ○ NO  Lowest Price Guarantee (B.S.G.P.)
○ YES ○ NO  24-Hour Service Guarantee (S.G.P.)              ○ YES ○ NO  Same Day Service Guarantee (S.G.P.)
○ YES ○ NO  Exclusive "No Lemon" Guarantee (G.P.)           ○ YES ○ NO  Temperature Selection Guarantee (S.G.P.)
○ YES ○ NO  No Overtime for Life Guarantee (P.)             ○ YES ○ NO  24-Hour Fix It or Hotel Guarantee (S.P.)
☑ Employees Drug Screened and Background Checked            ○ YES ○ NO  No Change Order Guarantee (B.S.G.P.)

### NOTES

Install new Service Champions Copper System in the home and conduct standard Service Champions Install

"Install of new equipment is necessary at this point due to safety reasons. The heat exchanger has shown cracking and stress points"

"Stress points and cracks in the heat exchanger can cause Co2 to leak out in the home"

Price includes all parts/ labor/ taxes/ permits/ HERS testing

### INVESTMENT TERMS

Total Price $ 11,709.00 _____ CK ☐ CC ☐ Financing ☐   Today's Investment $ 11,709.00 _____

Credit Card # _____ Exp Date: _____   Down Payment ($ _____

Method of Final Payment CC ☐ CK ☐ Financing ☐   CK # _____ CC Autho # _____

*100% Financing available, subject to lender acceptance   Final Pay Due On Completion $ 11,709.00

Financing Type None _____ Amount Financed $ _____

TERMS: Net due upon completion, or in accordance with financing agreement. See reverse side for additional terms.

I / We own the real property in which the equipment is to be installed and have authority to order the work as outlined above. TERMS: Net due upon completion, or in accordance with financing agreement. See reverse side for additional terms.

Approval: _____ Date 11/1/17

Approval: _____ Date 11/1/17
      Service Champions

NOTICES TO OWNER: See reverse side for important notices required in California. You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the day of this transaction. See notice of cancellation for an explanation of this right.